UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In the Matter of the
FORT TOTTEN METRORAIL CASES
Arising Out of the Events of June 22, 2009

LEAD CASE: <u>Jenkins v. Washington Metropolitan Area Transit Authority</u>, *et al.*,

THIS DOCUMENT RELATES TO:
ALL CASES

Case No. 10-MC-314 (RBW/JMF)

## MEMORANDUM OPINION

This case was referred to me for resolution of discovery disputes. Currently pending and ready for resolution is <u>Plaintiffs' Response to Defendant ADCO Circuit[s] Inc.'s Motion to Dismiss and Motion for Leave to Conduct Jurisdictional Discovery</u> [#108] ("Plains. Mot."). For the reasons stated herein, the motion will be granted.

## INTRODUCTION

This case arises out of the June 22, 2009 Metrorail train accident that resulted in the deaths of nine individuals and the injury of between seventy and eighty others. Plains. Mot. at 1. Plaintiffs are various passengers on that train as well as the estates of those passengers who are deceased. <u>Second Amended Master Complaint</u> [#125] ("SAMC") ¶¶ 20-155. Defendants are 1) the Washington Metropolitan Area Transit Authority ("WMATA"), the owner of the subway system where the accident occurred (SAMC ¶ 3), 2) Alstom Signaling, Inc., a Delaware

corporation that "provides train traffic control equipment, software and support services to Defendant WMATA" (SAMC ¶ 7), 3) Ansaldo STS USA, Inc., a Delaware corporation that "provided train traffic control equipment, software and support services to WMATA" (SAMC ¶¶ 10, 11), 4) ARINC, a Delaware corporation that "provided train traffic control equipment, including a safety warning system designed to detect the presence of other trains on the track, software and other support services to Defendant WMATA") (SAMC ¶¶ 13, 14), and 5) ADCO Circuits, Inc., a Michigan corporation that "provided circuit boards which were installed in train traffic control equipment manufactured and/or assembled by Defendants Alstom and/or ARINC and sold to Defendant WMATA" (SAMC ¶¶ 16, 17).

On August 2, 2010, ADCO moved to dismiss all claims against it on the grounds the Court lacked jurisdiction over it pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and that plaintiffs failed to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>Defendant ADCO Circuits, Inc.'s Motion to Dismiss Plaintiffs' First Amended Master Complaint for Lack of Personal Jurisdiction and Failure to State a Claim</u> ("ADCO's MTD") [#73]. Plaintiffs then sought leave of the Court to file a <u>Second Amended Master Complaint</u> ("SAMC") [#125], which was granted *nunc pro tunc* by minute order. <u>See</u> Minute Order dated October 18, 2010. In that complaint, plaintiffs assert nine claims against ADCO: 1) <u>Count VII</u>: Negligent Train Traffic Control (SAMC ¶¶ 228-241), 2) <u>Count IX</u>: Strict Products Liability-Design Defect, Manufacturing Defect, Failure to Warn (SAMC ¶¶ 250-259), 3) <u>Count X</u>: Negligence-Design Defect, Manufacturing Defect, Failure to Warn (SAMC ¶¶ 260-267), 4) <u>Count XI</u>: Breach of Implied Warrant of Merchantability (SAMC ¶¶ 268-272), 5) <u>Count XII</u>: Breach of Express Warranty (SAMC ¶¶ 273-276), 6) <u>Count XIV</u>: Negligent Train Traffic

Control (SAMC ¶¶ 284-298), 7) Count XV: Breach of Warranty & Implied Warranty of Fitness for Particular Purpose (SAMC ¶¶ 299-305), 8) Count XVI: Wrongful Death (SAMC ¶¶ 306-307), and 9) Count XVII: Survival Action for Injuries Prior to Death (SAMC ¶¶ 308-311). In its opposition to ADCO's motion to dismiss,[1] plaintiffs also moved the Court for an additional sixty days within which to conduct jurisdictional discovery.[2] Plains. Mot. at 2. That is the motion currently before the Court.

### DISCUSSION

I.  Standard of Review

In the District of Columbia Circuit, the standard for permitting jurisdictional discovery is "quite liberal." Diamond Chem. Co. v. Atofina Chems., Inc., 268 F. Supp. 2d 1, 15 (D.D.C. 2003). Accord Davis v. Grant Park Nursing Home LP, 639 F. Supp. 2d 60, 75 (D.D.C. 2009). "[H]owever, in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Accord Farouki v. Petra Int'l Baking Corp., 683 F. Supp. 2d 23, 28 (D.D.C. 2010). In addition, plaintiffs must provide the Court with a "detailed showing of what discovery it

---

[1] In response to the Court's granting plaintiffs' motion to file a SAMC, on October 29, 2010, ADCO filed another motion to dismiss, which specifically references the SAMC. See Defendant ADCO Circuits, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Master Complaint and McMillan's Second Amended Complaint for Lack of Personal Jurisdiction and Failure to State a Claim [#127].

[2] According to representations made by the parties in open court before Judge Walton, plaintiffs indicated that they would not be filing an updated motion for jurisdictional discovery given the Court's granting of their motion to file a SAMC.

wishes to conduct or what result it thinks such discovery would produce." United States v. Philip Morris, Inc., 116 F. Supp. 2d 116, 130 n.16 (D.D.C. 2000). Ultimately, the trial court has broad discretion to allow or disallow the discovery sought. FC Inv. Grp. LC v. IFX Markets. Ltd., 529 F.3d 1087, 1093 (D.C. Cir. 2008). Accord NBC-USA Housing, Inc., Twenty-Six v. Donovan, — F. Supp. 2d —, 2010 WL 3786502, at *4 (D.D.C. Sept. 27, 2010).

II. Analysis

Plaintiffs claim and ADCO does not dispute[3] that general jurisdiction is proper under "the Washington Metropolitan Area Transit Regional Compact, which establishes original jurisdiction in this Court over WMATA matters pursuant to WMATRC Art XVI § 81; D.C. Code Ann. § 1-2431(81) (1981) and DC ST § 9-1107.10."[4] SAMC ¶ 1. ADCO does dispute, however, that it is subject to this Court's personal jurisdiction. See Fed. R. Civ. P. 12(b)(2).

In order for this Court to exercise personal jurisdiction over ADCO, a non-resident defendant, the Court must first determine whether such jurisdiction is authorized by the District of Columbia's long-arm statute and then whether the exercise of such jurisdiction satisfies due process requirements. See NBC-USA Housing, Inc., Twenty-Six, 2010 WL 3786502, at *3; Davis, 639 F. Supp. 2d at 65.

    A.    Personal Jurisdiction Over ADCO is Authorized by the District of Columbia's Long-Arm Statute

The District of Columbia's long-arm statute states, in pertinent part, the following:

---

[3] See generally Defendant ADCO Circuits, Inc.'s Opposition to Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery ("ADCO's Opp.").

[4] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's - -
> (1) transacting any business in the District of Columbia:
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

D.C. Code Ann. § 13-423(a).

In this case, plaintiffs contend that personal jurisdiction over ADCO is appropriate under section (a)(4) of the statute. <u>Plaintiffs' Reply to Defendant ADCO Circuits Inc.'s Opposition to Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery</u> ("Plains. Reply") at 2. Specifically, plaintiffs argue that ADCO 1) caused tortious injury in the District of Columbia by an act or omission outside of the District of Columbia, and 2) derived substantial revenue from goods used or consumed in the District of Columbia:

> 16. Defendant Adco Circuits Inc. . . . engaged in transactions in the District of Columbia from which the claims herein arise. Upon information and belief, at all times relevant, Defendant Adco derived in excess of $10,000 in revenue from transactions involving the sale of circuit boards to Defendants Alstom and/or ARINC, who then incorporated the circuit boards into equipment that was sold to WMATA for use in the Metrorail system within the District of Columbia.
>
> 17. Upon information and belief, at all relevant times herein, Defendant Adco provided circuit boards which were installed in train traffic control equipment manufactured and/or assembled by Defendants Alstom and/or ARINC and

5

> sold to Defendant WMATA. Upon information and belief, at all times relevant, Defendant Adco knew or reasonably should have known that the circuit boards would be incorporated into train traffic control equipment and track circuit transmitters which are used in a finite number of subway systems (less than ten) in the United States, and would be used by Defendant WMATA in the District of Columbia.
>
> 18. Upon further information and belief, Defendant Adco designed, manufactured, marketed and/or sold to Defendants Alstom and/or ARINC a circuit board used in the transmitter for track circuit B2-304, and Defendants Alstom and/or ARINC, in turn sold the transmitter to Defendant WMATA. Upon further information and belief, Defendant Adco was negligent in manufacturing the circuit board that was incorporated into the transmitter WMATA used at track circuit B2-304, and Defendant Adco knew or reasonably should have known that the circuit board was defective and/or unreasonably dangerous. Upon information and belief, the circuit board failure was a cause [of] the train collision on June 22, 2009.
>
> 19. Upon information and belief, prior to June 22, 2009, Defendant Adco was involved in the negligent design, manufacture, marketing, inspection, distribution, sale and/or warranty to the public, including the WMATA subway system and the passengers using that subway system, and placed into the stream of commerce, defective and/or unreasonably dangerous component parts that were installed in the automatic train control system and/or warning system, or component parts thereof, for the WMATA system.

SAMC ¶¶ 16-19.

The term "substantial revenue" has been defined by a judge of this Court to mean "enough revenue to indicate a commercial impact in the forum, such that a defendant fairly could have expected to be hauled into court there." Delahanty v. Hinckley, 686 F. Supp. 920, 925 (D.D.C. 1986). "[T]he test for substantial revenue 'looks both at the absolute amount and at the

6

percentage of total sales, and determines what is substantial on the facts of each case.'" Fogle v. Ramsey Winch Co., 774 F. Supp. 19, 23 (D.D.C. 1991) (quoting Founding Church of Scientology v. Verlag, 536 F.2d 429, 433 (D.C. Cir. 1987)).  In determining whether the person or entity has derived substantial revenue from goods used or consumed, or services rendered, in the District of Columbia, the Court must focus on "the quality, quantity and *nature* of the contacts . . . taken in the aggregate . . ." Delahanty, 686 F. Supp. at 925 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)) (emphasis in original).

In this case, plaintiffs make three claims in support of their argument that this Court may exercise personal jurisdiction over ADCO.  First, plaintiffs claim that ADCO sold circuit boards to ARINC and Alstom, who then sold them to WMATA. Plains. Reply at 9-10.  Second, plaintiffs claim that ADCO knew or reasonably should have known that their circuit boards would be incorporated into equipment that was used in a finite number of subway systems, including WMATA in the District of Columbia. Id. at 10.  Third, plaintiffs claim that "a preliminary investigation by Alstom demonstrates that ADCO derived more than $77,000 in revenue just in 2005 from the sale of circuit boards to Alstom that were used in the Metrorail system." Id.  ADCO counters that plaintiffs' claims are insufficient in that they are both conclusory and unsupported. ADCO's Opp. at 11.  ADCO's arguments, however, lack merit.

By definition, plaintiffs' motion for leave to conduct jurisdictional discovery acknowledges that plaintiffs lack sufficient facts to state with particularity the basis for this Court's exercise of personal jurisdiction over ADCO.  That is not to say, however, that plaintiffs have failed to adequately support their motion.  First, contrary to ADCO's claim that plaintiffs made "general allegations that [ADCO] does business in the District" (ADCO's Opp. at 11),

7

plaintiffs argue that the District of Columbia's long-arm statute is applicable because ADCO "derives substantial revenue from goods used or consumed . . . in the District of Columbia," not because ADCO "regularly does . . . business . . . in the District of Columbia." In other words, plaintiffs' claims are based on language in the latter part of section 13-423(a) of the D.C. Code, not the first.

Second, although ADCO claims that plaintiffs never alleged that it sold any of its products in the District of Columbia, this is not required by the long-arm statute. As noted by the court in Delahanty, the District of Columbia's "long arm statute does not require that the manufacturer . . . have sold [a product] *directly* in the District." Delahanty, 686 F. Supp. at 925 (citing Gatewood v. Fiat, S.p.A., 617 F.2d 820, 827 (D.C. Cir. 1980)) (emphasis added).

Third, although ADCO challenges plaintiffs' assertion that "by selling a product to a nationwide distributor," ADCO should have known that there was a "vague possibility that the product could end up in the District," (ADCO's Opp. at 11), ADCO again fails to comprehend plaintiffs' argument. In support of its argument, ADCO cites the sworn affidavit submitted by Archie A. Damman, III, ADCO's President, in which he explicitly denies any knowledge that his company's products would end up in equipment that was ultimately sold to WMATA. ADCO's MTD, Ex. 1, § 22. However, whether or not Damman knew to a certainty that ADCO circuit boards would enter the stream of commerce that ultimately reached the Washington metropolitan area is not the issue. Plaintiffs contend that because there are less than ten subway systems, including WMATA, in the United States that utilize the train traffic control equipment and track circuit transmitters at issue in this case, ADCO knew or *reasonably should have known* that their circuit boards would end up being used by WMATA in the District of Columbia.

B. The Exercise of Personal Jurisdiction Over ADCO May or May Not Satisfy Due Process

"[P]ersonal jurisdiction exists when the defendant has purposely established minimum contacts with the forum state and when the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" Wiggins v. Equifax Inc., 853 F. Supp. 500, 502 (D.D.C. 1994) (quoting Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102 (1987)). The central issue is whether the nonresident's "conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). In this case, whether this Court's exercise of personal jurisdiction over ADCO satisfies due process cannot yet be resolved since additional discovery may or may not yield the necessary contacts with the District of Columbia. Furthermore, that issue is not before this Magistrate Judge.

C. Additional Discovery is Warranted

Finally, plaintiffs have made a sufficient good faith showing that additional jurisdictional discovery will enable them to show that this Court has personal jurisdiction over ADCO. Plaintiffs' showing has also been sufficiently detailed in that plaintiffs propose additional discovery in the following discrete areas:

1. Sales Data Reported by Alstom

In Alstom Signaling Inc.'s Responses to Plaintiffs' First Set of Interrogatories, Alstom provides figures for the value of ADCO sales to Alstom in the years 2005 and 2009 and indicates that it will continue to search for additional sales data. See Plains. Reply, Ex. 1 at 3-5. With additional discovery from Alstom (and ADCO), plaintiffs will be able to ascertain the total value of sales of circuit boards to Alstom in the years prior to the accident and may then be able to

determine what percentage of ADCO's total revenue in these years was derived from these sales.

2. ADCO's Knowledge Regarding the Ultimate Destination of its Circuit Boards

In Alstom Signaling Inc.'s Responses to Plaintiffs' First Set of Interrogatories, Alstom indicates that it is still investigating whether ADCO was aware their products would be used in the District of Columbia. See Plains. Reply, Ex. 1 at 3. With additional discovery from Alstom (and ADCO), plaintiffs will be able to ascertain whether ADCO knew or reasonably should have known that their circuit boards would be used in the District of Columbia. In addition, although Damman stated in a sworn affidavit that he was not aware that ADCO circuit boards would end up being used in the District of Columbia, if plaintiffs were given an opportunity to depose him, they could potentially elicit additional information as to his knowledge and make an argument that he either did know or should have known that ADCO products would be used by WMATA, given the small number of subway systems that utilize such equipment in the United States. See Plains. Reply at 10-11, 13.

## CONCLUSION

Based on the foregoing, plaintiffs will be permitted to conduct limited additional discovery aimed at determining whether this Court's exercise of personal jurisdiction over ADCO is justified. An Order accompanies this Memorandum Opinion.

---------------------------------------
**JOHN M. FACCIOLA**
**UNITED STATES MAGISTRATE JUDGE**