UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the<br>**FORT TOTTEN METRORAIL CASES**<br>Arising Out of the Events of June 22, 2009<br><br>**LEAD CASE:** <u>Jenkins v. Washington Metropolitan Area Transit Authority,</u> *et al.*,<br><br>**THIS DOCUMENT RELATES TO:**<br>**ALL CASES** | Case No. 10-MC-314 (RBW/JMF) |

**MEMORANDUM OPINION**

This case was referred to me for resolution of discovery disputes. Currently pending and ready for resolution is <u>Defendant ARINC Incorporated's Motion for Sanctions Against Defendant WMATA</u> [#423]. For the reasons stated herein, the motion will be denied.

**BACKGROUND**

The collision between two Washington Metropolitan Area Transit Authority ("WMATA") trains occurred on June 22, 2009, and a lawsuit pertaining to it was filed within two days. Software called the Advance Information Management ("AIM") system had been installed by ARINC and plaintiffs named ARINC as a defendant in the complaint. See <u>Master Complaint</u> [#5]; <u>Defendant ARINC Incorporated's Memorandum of Points and Authorities in Support of Motion for Sanctions Against Defendant WMATA</u> [#423-1] at 2. On December 17, 2010, WMATA asserted a cross claim against, *inter alia*, ARINC for indemnity and contribution.

Defendant Washington Metropolitan Area Transit Authority's Cross-Claim Against Defendants Alstom Signaling, Inc., Ansaldo Sts USA, Inc., and ARINC Incorporated [#140].

On April 1, 2011, Judge Walton set April 15, 2011, as the deadline for production of documents. Amended Scheduling Order [#234]. Nevertheless, WMATA continued to produce documents well after that date in response to demands by the parties, including ARINC. [#423-1] at 4.

On August 10, 2011, ARINC took the deposition of a man named Daniel Epps, III, a WMATA employee who served as the Director of the Operations Control Center where ARINC's software, the AIM system, is in use. [#423-1] at 4. Eppps indicated that another WMATA employee named Beck Pak had the responsibility to make recommendations pertaining to a Business Process Review conducted by an ARINC subcontractor in connection with the design and implementation of the AIM system. Id.

ARINC had previously placed WMATA's production of documents into a database. Id. at 4. After Epps' deposition, ARINC searched its database to find some documents referencing Pak and those that did, came for the most part, from ARINC's own production. Id. ARINC inquired of WMATA whether it had collected and produced documents from Pak's file. Id. at 4-5. While WMATA investigated, ARINC looked in the database for the files of other WMATA employees, Arturo Weldon, Robert Gholston, III, and then later Milton Jetter, after WMATA indicated that Jetter was a contract specialist who had dealt with the contract between ARINC and WMATA. Id. at 5.

On September 22, 2011, ARINC contacted WMATA about its concerns regarding how few documents had been produced as to these individuals and on September 29, 2011, the day

2

before all discovery was to close, WMATA indicated that it was in the process of collecting the documents pertaining to these individuals. Id. at 6. WMATA also indicated that it had identified another employee, Ashak Rajpal, who was a contracting officer for the "WMATA ROCS/AIM upgrade." Id.

According to ARINC, from September 30, 2011, to October 14, 2011, WMATA made eight document productions, consisting of almost 300,000 pages of documents, and that when ARINC filed the current motion, it was still awaiting the production of additional documents. [#423-1] at 8. Having filed its motion for summary judgment on November 11, 2011, without certain documents, ARINC claims that it has been prejudiced by having to proceed without them. Id. at 8-9, 16. It urges that WMATA be precluded from using these documents while ARINC is permitted to use them, and that the jury be instructed that it may draw an adverse inference from WMATA's late production. Id. at 23. Finally, ARINC demands that it be paid its attorney's fees and costs for having to file the motion. Id. at 23-24.

In its opposition to ARINC's motion, WMATA supplements the history of this dispute by recounting its responses to the discovery demanded by plaintiffs and its fellow defendants. See WMATA's Opposition to ARINC Incorporated's Motion for Sanctions [#463]. First, WMATA notes that it had to respond simultaneously to the discovery demands of the plaintiffs and its co-defendants. [#463] at 4. With the concurrence of plaintiffs, "WMATA created seven general categories of requested materials to classify responsive documents" and used this approach "to address countless complications presented by the requests for documents from the co-defendants." Id. Because WMATA and ARINC shared an e-discovery vendor, WMATA indicated that it was not asked and therefore did not provide the names of the "custodians" of the

produced discovery since it believed that ARINC had equal access to those names. Id. at 5. WMATA ultimately produced more than 3 million pages of documents (id. at 4) and insists that "[T]housands of pages of documents naming the five individuals named in ARINC's motion [for sanctions] were produced before ARINC raised this discovery dispute." Id. at 5.

On July 16, 2010, ARINC served its answer to the First Amended Master Complaint [#35] and specified, as its eighth defense, the government-contractor defense. Defendant ARINC Incorporated's Answer to the First Amended Master Complaint [#62] at 48. ARINC now cites this defense as a basis for its motion for summary judgment against the plaintiffs, arguing that ARINC partakes of the sovereign immunity afforded WMATA because it was WMATA's contractor. See Defendant ARINC Incorporated's Reply to WMATA's Opposition to Motion for Sanctions [#491] at 7; Defendant ARINC Incorporated's Motion for Summary Judgment [#428].

In its initial disclosure, ARINC identified 33 current or former WMATA employees as witnesses with information related to ARINC's claims and defenses. WMATA's Opposition to ARINC Incorporated's Motion for Sanctions [#463] at 6. Included in that list were 1) Robert Ghoulston, 2) Beck Pak, and 3) Arturo Weldon, three of the potential witnesses who were the subject of ARINC's inquiries in September, 2011. Id. As to these three people, ARINC indicated that they had knowledge and information regarding: "(i) performance of the ROCS Contract; (ii) the design of the AIM product for WMATA; and (iii) communications with ARINC personnel regarding the development, testing, cutover, and/or installation of the AIM software for WMATA." Id. ARINC further indicated in its initial disclosure that it would rely on contracts between itself and WMATA in support of its government contractor defense and that one of those agreements, dated October 23, 2004, states that notices are to be sent to Jetter and that the

4

agreement is signed by Rajpal. Id. at 7.

WMATA responded by producing eight witnesses "who testified with regard to WMATA's use of the AIM system, the contract with ARINC and the related Business Process Review, during thirteen days of depositions." Id. WMATA also permitted the inspection of the "Operations Control Center (where the central computer system using the AIM system is operated) over two days." Id. Ultimately, WMATA produced 3,348,483 pages of electronically stored information while ARINC produced 2,476,363 pages, to which both sides applied an electronic records system to sort, group, and digest. Id. at 8.

According to WMATA, in the late summer of 2011, ARINC sought discovery of documents pertaining to Pak, Walden, Jetter, and Ghoulston. [#463] at 9. On August 8, 2011, ARINC also served a notice of a Rule 30(b)(6) deposition. Id. WMATA responded to the demand by producing responsive, non-privileged documents related to Pak and Weldon on September 30, 2011. Id. at 10. WMATA also identified three witnesses it intended to produce for the 30(b)(6) deposition: 1) Pak, 2) Tim Shoppa, and 3) Rajpal. Id. WMATA also produced electronically stored information from Ghoulston's hard drive, explaining that only approximately 20% of the 23,600 documents on that hard drive would be responsive. Id. at 11. Finally, "WMATA also agreed to produce additional witnesses for depositions and designated testimony previously provided by its witnesses to respond to several other issues raised in ARINC's notice of deposition." Id. WMATA complains, however, that "ARINC never provided a listing of key documents and categories of documents it sought in the discovery dispute" and furthermore, that, although WMATA completed its supplemental productions by November 4, 2011, ARINC "has not requested dates for the designated 30(b)(6) witnesses, and has not

5

formally responded to WMATA's offer to designate testimony of witnesses in response to several topics in ARINC's 30(b)(6) notice of deposition." Id.

In its reply, ARINC's insists that WMATA's production in September of 2011 was late, and that it should have produced the documents from these "key custodians" in its original production because their production was clearly called for in the request for documents that ARINC served in August of 2010. Defendant's ARINC Incorporated's Reply to WMATA's Opposition to Motion for Sanctions [#491] at 1-4. ARINC further claims that it was prejudiced because had it had the documents sooner it could have done additional follow up discovery during the discovery period and then used the documents produced and perhaps other information developed therefrom in the motion for summary judgment it has now filed. Id. at 8.

**ANALYSIS**

First, and to clear away some brush, I must dispose of arguments that ARINC made in its opening brief but does not address in its reply.

In its opening brief, ARINC argued that WMATA failed in its obligation to preserve certain records, ignoring the principles that are applied when a party, through inadvertence or with a nefarious intent, causes the loss of electronically stored or other information. In its opposition, WMATA explained that every document ARINC demanded was produced, even though WMATA had to restore data from back-up tapes in order to do so. ARINC did not quarrel with WMATA's statement in its reply and WMATA has convinced me that it lost nothing that ARINC demanded. There being no evidence of any loss of data, the complicated principles pertaining to preservation and spoliation do not, thankfully, have to be considered.

Second, ARINC argued in its opening brief that sanctions were appropriate because of

WMATA's alleged failure to comply with its obligation to make the initial disclosures required by Rule 26(a)(1). WMATA responded that the government contractor defense asserted in ARINC's answer, which would ultimately become the basis of its motion for summary judgment, is not a claim or defense that WMATA has asserted or will assert. Thus, WMATA had no responsibility to produce discoverable information as to that defense.

Federal Rule of Civil Procedure 26 provides in pertinent part:

> (A) . . . [A] party must, without awaiting a discovery request, provide to the other parties:
> (i) the name . . . of each individual likely to have discoverable information–along with the subjects of that information–that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
> (ii) a copy–or a description by category and location–of all documents, electronically stored information, and tangible things that the disclosing party . . . may use to support its claims or defenses, unless the use would be solely for impeachment;

Fed. R. Civ. P. 26(a)(1).

WMATA points out that ARINC's government contractor defense is not a defense or claim that WMATA is asserting and that therefore this rule did not apply to its initial disclosure. [#463] at 1. ARINC responds to this argument by stating the following in a footnote:

> . . . The discovery rules, however, do not offer this kind of insulation. The rules require the production of requested documents that are relevant to "any party's claim or defense," not just those claims or defenses that pertain specifically to the producing party. Fed. R. Civ. P. 26(b)(1).

[#491] at 7 n.1.

But, the rule cited by ARINC in its footnote is not the rule that pertains to initial

disclosures. Rule 26(b)(1) defines the scope of discovery in general and not the scope of the required initial disclosures under Rule 26(a)(1). Indeed, if ARINC's argument were accepted, the latter would read with the "amendment" shown in italics as follows:

>   (A)  . . . [A] party must, without awaiting a discovery request, provide to the other parties:
>     (i)  the name . . . of each individual likely to have discoverable information–along with the subjects of that information–that ~~the disclosing~~ *any* party may use to support its claims or defenses, unless the use would be solely for impeachment;
>     (ii)  a copy–or a description by category and location–of all documents, electronically stored information, and tangible things that ~~the disclosing~~ *any* party . . . may use to support its claims or defenses, unless the use would be solely for impeachment;

This would impose an extraordinary new obligation on the parties to a lawsuit and ARINC's contention that Rule 26(a)(1) should be read to impose it cannot be countenanced.

Since the initial disclosure rule cannot serve as the basis of a sanction, the only rule-based sanction available to ARINC would be if WMATA's assertedly late response violated a court order. See Fed. R. Civ. P. 37(b). Of course, WMATA never violated any court order. Indeed, the only court order pertaining to this controversy is Judge Walton's order that all written discovery be completed by April 15, 2011. Ironically, *ARINC* violated a court order by demanding additional discovery in September 2011, in direct violation of Judge Walton's scheduling order and without ever seeking leave to do so. Thus, ARINC finds itself in the strange position of demanding sanctions for an opposing party's lateness in responding to discovery that ARINC should have not propounded in the first place. It would be a perverse

reading of the Federal Rules of Civil Procedure to sanction WMATA for ARINC's claim that WMATA failed to aid ARINC in violating a court order in order to secure discovery that ARINC should not have had.

Rule based sanctions not being available, ARINC is left to invoke the inherent authority of the court. But, as the court of appeals recently made clear, "To support a sanction under this authority, the court must make a finding by clear and convincing evidence that Noble committed sanctionable misconduct that is tantamount to bad faith." Ali v. Tolbert, 636 F.3d 622, 628 (D.C. Cir. 2011). Here, there is no claim by ARINC, let alone a showing by clear and convincing evidence of such bad faith on WMATA's part.

Furthermore, in considering the award of a sanction under its inherent authority, the court must consider, *inter alia*, the prejudice to the opposing party. Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996). Any claim of prejudice to ARINC is, at this point, premature. First, as ARINC has to concede, if Judge Walton grants its motion for summary judgment, accepting its governmental contractor defense on the present record, ARINC has not suffered any prejudice whatsoever. Second, I see no reason why ARINC cannot now move Judge Walton to be permitted to supplement its motion with additional, recently disclosed information from WMATA that advances its case. Third, even if its motion is denied, ARINC can still move Judge Walton in *limine* or at trial for the preclusion it seeks and, again, if he grants it, ARINC will not be prejudiced. At this point, the claim of prejudice is so attenuated and hypothetical that it would be an abuse of discretion to award sanctions. Indeed, the prejudice is so hypothetical that I question whether the motion even presents a case or controversy rather than an improper request for an advisory opinion. See Los Angeles v. Lyons, 461 U.S. 95 (1983).

## CONCLUSION

For the reasons stated above, Defendant ARINC Incorporated's Motion for Sanctions Against Defendant WMATA [#423] will be denied.  An Order accompanies this Memorandum Opinion.

**SO ORDERED.**

_____
**JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE**