# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In the Matter of the | ) | |
| **FORT TOTTEN METRORAIL CASES** | ) | |
| Arising Out of the Events of June 22, 2009 | ) | |
| | ) | |
| **LEAD CASE:** *Jenkins v. Washington* | ) Case No.: 1:10-mc-314 (RBW) (JMF) | |
| *Metropolitan Area Transit Authority, et al.* | ) | |
| | ) **FILED UNDER SEAL** | |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | |
| **ALL CASES** | ) | |
| | ) | |

---

### WMATA'S OPPOSITION TO THE JOINT DEFENDANTS' MOTION TO STRIKE WMATA'S NOTICE REINSTATING MOTIONS AND RESPONSE TO THE JOINT DEFENDANTS' MARCH 2, 2012 NOTICE

---

William G. Gandy, Esq.
Jason R. Waters, Esq.
8444 Westpark Drive- Suite 510
McLean, VA 22102
Telephone: (703) 245-9300
Facsimile: (703) 245-9301
William.Gandy@wilsonelser.com
Jason.Waters@wilsonelser.com

Robert B. Wallace, Esq.
700 11th Street, N.W., Suite 400
Washington, DC 20001
Telephone: (202) 626-7660
Facsimile: (202) 628-3606
Robert.Wallace@wilsonelser.com

RECEIVED
MAR - 8 2012
SUPERIOR COURT

444006.2

The Joint Defendants' Motion to Strike WMATA's Notice and Response to the Joint Defendants' March 2, 2012 Notice selectively relies on statements made by this Honorable Court during oral argument. However, their argument is severely flawed and their Motion is properly denied.

As an initial matter, at no point in the hearing did the Court rule or state that WMATA would not be permitted to reinstate its dispositive motions. This issue was not before the Court and thus the Court did not make a specific ruling with regard to WMATA's dispositive motions. The Joint Defendants' interpretation of the Court's silence on an issue not raised as an affirmative decision by the Court is untenable.

Thus, the Joint Defendants' position that the Court did not authorize WMATA to reinstate its dispositive motions is misleading. WMATA requested that the Court find a knowing waiver by the Joint Defendants of their summary judgment motions. *See*, Hearing Transcript of February 28, 2012, attached hereto as Exhibit A, at 18:7-13; 27:23-28:15. The Court declined to do so. Id. at 35:13-23. However, the Court's ruling specifically states it is addressing the waiver "argued by WMATA." Id. The Joint Defendants made no such request of the Court to find a waiver of WMATA's dispositive motions. Consequently, the Court did not rule on this issue as it was not before it.

In addition, the Court initially stated that "maybe we put those [summary judgment motions] back on the table to the extent that they relate to the dispute between the parties about liability." Exhibit A at 21:8-10. This statement is without qualification or limitation as to which summary judgment motions may be reinstated. The Court's later statements aimed at the corporate defendants were made in response to repeated representations by counsel regarding

2

their rationale for agreeing to certain terms of the purported settlement.  See, e.g., Exhibit A at

26:19-27:6 (addressing the concerns of Mr. Rosenthal).

Next, the Joint Defendants make the unsupported assertion that it is "undisputed that

WMATA has knowingly waived the motions it now seeks to reinstate." This statement is

disingenuous as WMATA's previous withdrawal of those motions was made in the same

conversation and under the same circumstances as the waivers of the Joint Defendants.  The Joint

Defendants' argument that WMATA knowingly waived its dispositive motions is raised for the

first time in the instant Motion.  It is unsupported by facts or law.  Further, permitting only

certain parties to reinstate their dispositive motions is contrary to the Court's efforts to preserve

equity.  The Court found that, as there was no meeting of the minds between the defendants,

equitable principles dictated that the motions may be reinstated.  Exhibit A at 35:13-18.  The

Joint Defendants cannot show any reason that this ruling should not apply to all the defendants

based on the Court's reasoning.

Finally, the Joint Defendants seek to have the Notice stricken as "untimely."  The Court

requested that the defendants submit written notice of any request to reinstate summary judgment

motions by the end of the week, so that the Court could appropriately manage its calendar for the

pending cases.  Exhibit A at 36:11-17.  The Court gave that instruction on Tuesday afternoon.

The Joint Defendants did not file their Notice until 8:44 p.m. on Friday night.  WMATA

responded to this Notice on Monday, the next business day, ensuring that the Court was timely

advised of its intention to reinstate its Motions.

Due to the Joint Defendants' late filing of their Notice, WMATA could not have

responded any earlier.  Furthermore, WMATA's prompt submission to the Court is consistent

with the Court's request that the information be provided with sufficient time for the Court to

manage its calendar.  Even assuming *arguendo* that WMATA's filing was untimely, the Joint Defendants have not demonstrated any prejudice to the parties or the Court by the timing of the filing and have not cited any legal authority to support the draconian sanction of precluding WMATA's reinstatement of its dispositive motions.

WMATA also notes that the Joint Defendants' Proposed Order requests that the pending dispositive motions be deemed "waived."  For the purposes of clarity, WMATA vehemently objects to any waiver of not only the motions themselves, but also the defenses asserted therein. The Joint Defendants' Motion to Strike did not seek to impose sanctions including waiver of defenses at trial and WMATA reserves its right to raise additional defenses to the extent that the Joint Defendants' proposed order may be read to reflect a request for a waiver of the defenses altogether.

For the reasons stated herein and in the interests of equity, WMATA respectfully requests that the Court deny the Motion to Strike to WMATA's Notice Reinstating Motions and Response to the Joint Defendants' March 2, 2012 Notice.

Dated: March 12, 2012

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: 

Robert B. Wallace, Esq. (# 108571)
700 11th Street, N.W., Suite 400
Washington, DC 20001
Telephone: (202) 626-7660
Facsimile: (202) 628-3606
Robert.Wallace@wilsonelser.com

444006.2

William G. Gandy, Esq. (# 491153)
Jason R. Waters, Esq. (# 491066)
8444 Westpark Drive- Suite 510
McLean, VA 22102
Telephone: (703) 245-9300
Facsimile: (703) 245-9301
William.Gandy@wilsonelser.com
Jason.Waters@wilsonelser.com

Of Counsel:
Thomas W. Tobin, Esq.
Wilson, Elser, Moskowitz,
Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604-3407
Telephone: (914) 323-7000
Facsimile: (914) 323-7001

/s/ Mark F. Sullivan
Carol B. O'Keeffe, Esq.*
*General Counsel*
Bruce P. Heppen, Esq. (# 252171)
*Deputy General Counsel*
Mark F. Sullivan, Esq. (# 430876)
*Deputy General Counsel*
Brendan Chandonnet, Esq. (# 986719)
*Assistant General Counsel*

Washington Metropolitan Area Transit Authority
600 Fifth Street, N.W.
Washington, DC 20001
Telephone: (202) 962-2814
Facsimile: (202) 962-2550
MSullivan@WMATA.com
BChandonnet@WMATA.com

\*      Carol B. O'Keeffe is a member of the Bar of the District of Columbia. Her bar number is
445227. She is not a member of the Bar of this Court.

444006.2

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 12, 2012, a copy of the foregoing was served via electronic mail on counsel for defendants Alstom Signaling, Inc., Ansaldo STS USA, Inc. and ARINC, Inc.

Robert B. Wallace

444006.2

1

1          IN THE UNITED STATES DISTRICT COURT

2              **FOR THE DISTRICT OF COLUMBIA**

3    . . . . . . . . . . . . . . . .    Docket No. MC 10-314
     IN RE:   IN THE MATTER OF THE   .
4    FORT TOTTEN METRORAIL CASES      .   Washington, D.C.
     ARISING OUT OF THE EVENTS OF   .   Tuesday, February 28, 2012
5    JUNE 22, 2009                    .
     . . . . . . . . . . . . . . . .
6

7              TRANSCRIPT OF MOTIONS HEARING

8        BEFORE THE HONORABLE JUDGE REGGIE B. WALTON

9              UNITED STATES DISTRICT JUDGE

10   APPEARANCES:

11   For the Defendants:   WILLIAM G. GANDY, Esquire
                           ROBERT BRUCE WALLACE, Esquire
12                         Wilson Elser Moskowitz Edelman
                            & Dicker LLP
13                         700 11th Street, NW, Suite 400
                           Washington, D.C. 20001
14
                           MARK F. SULLIVAN, Esquire
15                         Washington Metropolitan Area
                             Transit Authority
16                         600 Fifth Street, NW
                           Washington, D.C. 20001
17
                           JOHN J. ROSENTHAL, Esquire
18                         MATTHEW A. CAMPBELL, Esquire
                           Winston & Strawn LLP
19                         1700 K Street, NW
                           Washington, D.C. 20006-3817
20
                           ROBERT F. REKLAITIS, Esquire
21                         LeClair Ryan
                           1101 Connecticut Avenue, NW
22                         Suite 600
                           Washington, D.C. 20036
23
                           LINDA S. WOOLF, Attorney-at-Law
24                         Goodell, DeVries, Leech & Dann, LLP
                           One South Street, 20th Floor
25                         Baltimore, MD 21202

**EXHIBIT**

A (RBW)

1:10-MC-00314

2

Court Reporter:   Cathryn J. Jones, RPR
                  Official Court Reporter
                  Room 6521, U.S. District Court
                  333 Constitution Avenue, N.W.
                  Washington, D.C. 20001


Proceedings recorded by machine shorthand, transcript
produced by computer-aided transcription.

<pre>
 1                    P R O C E E D I N G S
 2          THE COURT:  I had not talked to the mediator in
 3    the case regarding the mediation.  I don't know if I
 4    necessarily share his concerns, but out of an abundance of
 5    caution I have tried to shield myself as much as possible
 6    from any discussions that would have taken place during the
 7    mediation so that conceivably I would not in somehow taint
 8    my ability to decide this issue that exists between the
 9    defendants.
10          One of the I guess first questions I have is:  Was
11    there ever any signed agreement between the parties
12    regarding the damage allotment issue?
13          MR. REKLATIS:  Your Honor, Robert Reklatis.  I'm
14    going to speak -- I represent Ansaldo, but I'm going to
15    speak for the three defendants until the non-WMATA
16    defendants until they want to jump up and correct me or
17    whatever.  There is not a signed agreement.  Trying to
18    preserve the line that Your Honor is drawing we reached an
19    agreement at mediation as to allocate -- essentially there
20    were three major economic terms; one was the allocation of
21    responsibility among the parties, who was going to pay what
22    percentage and I won't reveal those percentages right now,
23    but the cat has been let out of the bag to some extent.
24          THE COURT:  I don't know what those percentages
25    are.
</pre>

1          MR. REKLATIS:  Yeah.  Yeah.

2          MR. GANDY:  Your Honor, may I?

3          THE COURT:  Yes.

4          MR. GANDY:  He's just about to get into the

5    discussions at the mediation.  I thought --

6          MR. REKLATIS:  No, I'm not.

7          MR. GANDY:  I thought Your Honor was going to

8    shield himself.  The question was:  Was there a signed

9    agreement?  And the answer to the question is most assuredly

10   there was no signed agreement.

11         THE COURT:  Okay.

12         MR. REKLATIS:  Your Honor, I'm not going to go

13   into any of the substance of what was said at the mediation.

14   I'm saying at the conclusion of the mediation we reached an

15   agreement on allocation, on basically what was going to be

16   released and what cross-claims were going to be dismissed.

17   And then there was an issue at the, issue before Your Honor

18   what carve out provisions would be retained that wouldn't be

19   released by the three defendants against a claim that WMATA

20   was making.

21         So there was an issue that occurred at the

22   mediation when we asked for clarification of that claim, and

23   I'm not going to go into the substance of that suggestion if

24   you don't want me to, but we asked for a clarification of

25   that claim.  WMATA provided the mediator with the

1    clarification.  We accepted the carve out on the basis of

2    that clarification.  Then we moved forward.  The mediator

3    was gone at that point.  We moved forward.  We settled on

4    the allocation percentages.

5          We settled -- Mr. Wallace even in an email said we

6    had an agreement in principle, one of the WMATA lawyers,

7    sent an email on January 25th.  WMATA and Arinc prepared the

8    first draft of the settlement agreement which I reviewed and

9    accepted.  It was then sent to Alstom.  In that agreement it

10   said that there would be a claim for subrogation claims for

11   property damage that would be carved out of the release, of

12   the general releases of all the different defendants.  So

13   subrogation claim for properties damage.

14         Now that term was discussed during the mediation

15   what that meant.  Okay.  We think that term is unambiguous.

16   Property damage if you look at any insurance policy is

17   physical injury to tangible property.  Subrogation is where

18   an insurer steps into the shoes of its insured after it has

19   paid a claim.  So what property damage -- subrogation claims

20   for property damage means if an insurance company paid a

21   claim for physical injury to tangible property that claim

22   would be carved out of the general releases that the parties

23   were going to enter.

24         That was not part of the mediation.  That is a

25   document that WMATA prepared, signed off on, sent to Alstom

1    on January 18th.  We went through all the mediations.  We

2    were successful in settling seven of the nine death cases.

3    All of the significant, the large personal injury cases; the

4    two, I don't want to characterize the two that you're going

5    to try next month but they're among the smaller ones or the

6    ones that we were mediating.

7         And then on January 30th, WMATA presented a

8    rewrite of that provision that said not only do we want a

9    carve out for subrogation for physical injury to tangible

10   property for property damage we want to preserve a business

11   interruption claim and we want to preserve claims for money

12   that we paid not just our carriers paid.

13        Now when we were negotiating this deal, and again,

14   I'm not going to get into the details; although, I think

15   it's important that we do at some point.  When we were

16   negotiating this deal money is fungible.  You're looking at

17   a physical injury to tangible property claim and people are

18   trying to decide what percentage they should pay and they

19   take that in to account.  And they decide okay, I'm going to

20   stop at this percentage because I have this property damage

21   claim out there and you factor all that in.  Now WMATA

22   brings up this business interruption claim.  That claim

23   would be a nightmare.

24        I mean can you imagine -- I mean we basically have

25   to retry the entire liability case because WMATA will say in

1    a business interruption claim that their business went down,

2    that their ridership went down because of this accident not

3    because of the bad escalators, the bad publicity or anything

4    else or the economy.  You can imagine the expert witnesses

5    and everything that we would have in a case like that.  It

6    would be a nightmare.  There is no way any of these three

7    defendants would have agreed to a carve out of such a

8    nightmare kind of claim here.

9            So what happened was be -- forget the mediation.

10   Forget what happened at the mediation.  We can talk about

11   that.  We had an unambiguous agreement that WMATA prepared

12   that said I want to carve out subrogation claims for

13   property damage.  Claims paid by my insurance company for

14   physical injury to tangible property.

15           Twelve days later after all the mediations were

16   over, after all these cases settled, after we dropped our

17   summary judgments, after we dropped the major summary

18   judgment motion we had on superseding cause, after we

19   mediated these cases and paid our percentages as we agreed

20   to, the proof is in the pudding on whether there was an

21   agreement.  When we settled a case for whatever the amount

22   is $2 million dollars we will pay the percentage we agreed

23   to on that $2 million dollars.  We have a deal.

24           Everybody has been acting in accord with that

25   deal.  No one has tried to move away from the percentages

1   that the parties agreed to or the general releases except

2   for this one carve out that WMATA tried to change the rules

3   on two weeks later after we had all agreed to and went

4   forward with the mediations.

5          Now there are two ways of looking at this, Your

6   Honor.  If the agreement that we reached that we went

7   forward with on the mediation on the basis of and dropped

8   our summary judgment and dropped our decision to not contest

9   liability, all those kinds of issues, all the panoply of

10  issues that went into that.  If that agreement is

11  unambiguous, if subrogation claims for property damage is

12  unambiguous and it doesn't include business interruption or

13  money paid by WMATA then you don't have to go back and look

14  at all this mediation stuff and Rule 84 or any of the

15  confidential -- you can decide that on January 18th, WMATA

16  presented an agreement.  And on this term it was unambiguous

17  and no party changed any material term on that subrogation

18  carve out and we can forget the mediation.

19         If it is ambiguous if subrogation claims for

20  property damage is ambiguous during the mediation that issue

21  was explored and explained.  I won't talk about the

22  substance of it.  But a question was asked and a question

23  was answered that goes directly to that issue and explains

24  why the parties agreed.  So the only way to resolve the

25  ambiguity at that point would be to go back and look at the

1    negotiating history between the parties.

2              So there's a line you would have to cross if you

3    found the ambiguity.  Then we'd have to get to the issue of

4    the confidentiality of the settlement agreement.  If you

5    find that subrogation for property damage is unambiguous,

6    you don't have to reach the mediation issue or the

7    confidentiality.  Thank you.

8              THE COURT:  Although presented to the Court in a

9    different context and there's not from what my law clerk

10   tells me a lot of law on this area, I mean obviously you've

11   got contract law that's well defined.  But in reference to

12   this precise issue as I say although in a different context

13   Judge Lamberth did rule that if there was not a signed

14   consummated agreement between the parties that there was not

15   an enforceable or at least an agreement that the Court would

16   enforce.

17             MR. REKLATIS:  That was under a Rule 84 mediation

18   which we didn't have here.  I think the orders that Your

19   Honor issued in the --

20             THE COURT:  It's somewhat analogous.

21             MR. REKLATIS:  Sure, it's somewhat analogous, but

22   we didn't have a Rule 84 mediation here.  There was no

23   defendants only mediation that was contemplated by any of

24   the case management orders that Your Honor issued.  All the

25   mediations related to getting the plaintiffs to mediation in

1    June and November and December.  And there was nothing about

2    ordering us to go to mediation.  And we privately contracted

3    with Mr. Marks in early December to do the mediation on

4    December 9th.

5              THE COURT:  Okay.  Thank you.  Yes.

6              MR. GANDY:  Good afternoon, Your Honor, Bill Gandy

7    for WMATA.  It was a little difficult to restrain myself in

8    view of the discussion that just took place because much of

9    what took place involved a disclosure of confidential

10   information pursuant to the mediation.  That said, if it

11   pleases the Court I think I would proceed to talk about our

12   motion to strike because the Court has raised the issues

13   under Rule 84 and the *Davis* case.

14             And when we look at our motion the genesis of the

15   motion Your Honor was precisely the circumstance that we

16   find ourselves in this afternoon.  Which is we always

17   believed that we were entitled to the right to deal with

18   confidentiality in the first instance especially under the

19   *Davis* case before reaching the merits.  And understand Your

20   Honor as I think you can see from our papers we have a lot

21   to say about the merits of the case, too.  There was much

22   factual information that was omitted including the most

23   impartial statement from the mediator.

24             THE COURT:  I don't think you have to convince me

25   because if there was a confidentiality agreement and there

1    appears to have been a confidentiality agreement that I

2    agree that what should have come to me first was a request

3    to file the motion that would reveal the confidential

4    information for whatever reason the corporate defendants

5    thought was appropriate before the actual pleading was

6    filed.

7             However, I haven't made myself privy to that

8    information because of my concerns.

9             MR. GANDY:  Thank you, Your Honor, I appreciate

10   that.  Although counsel whether unwittingly or

11   unintentionally just discussed confidential information in

12   making his argument and laying this out.  And the Davis case

13   is quite instructive.

14            We sort of had two points to make with regard to

15   the motion to strike.  Number one, the local Rule 84, we say

16   does apply as it appears twice in Your Honor's scheduling

17   orders.  The Court specifically in those orders talked about

18   retaining some control over liability so that there would

19   not be inconsistent results.  I would point out that there

20   were three mediations where the issue of allocation was

21   actually mediated within the context of the plaintiff's

22   case.  That was the *Flanagan* case and two others

23   unsuccessfully, but those -- in one case we settled it, but

24   there were discussions in both on the issue.  And then we

25   moved into the remainder of the cases and seeing that it was

1    practical decided to bifurcate the mediation.

2              We advised the Court I believe at least one it may

3    have been two court hearings that this was contemplated.

4    Nobody ever raised the issue that Rule 84 should not apply

5    to those mediations having the Court previously set it forth

6    in two scheduling orders.  And that we believed that Rule 84

7    would apply.  Now if Rule 84 does apply as Your Honor

8    pointed out it requires a signed agreement in order for

9    agreements to be binding.  And that's, the reason for that

10   is precisely what we heard, and I'm not giving the other

11   side at this point here today about the back and forth that

12   goes on in connection with negotiation.

13             But even more importantly is the confidentiality

14   provision of the local rule.  And in the Davis case the

15   Court was pretty clear, okay, that that precluded the

16   introduction of any evidence that flowed from the mediation,

17   that the Court should be insulated from that.  And more

18   particularly because there's already been discussion of

19   drafts here, which I would submit is inappropriate, that

20   those drafts are part of the mediation process and they were

21   stricken by Judge Lamberth in connection with that.

22             Interestingly enough, the codefendants chose not

23   to discuss *Davis* in either their original motion and I don't

24   believe they even discussed it in their reply despite the

25   fact that we brought it up.  So that's number one, Your

1    Honor.

2            Number two, the private mediation agreement also

3    was executed here between the parties.  And we cited the

4    *Facebook* case out of the Ninth Circuit which was actually a

5    claim of fraud by the plaintiffs in that case, securities

6    fraud that they tried to raise utilizing information covered

7    by a confidential mediation.  And the Court ruled that that

8    evidence had to be stricken and could not be used.  So we

9    have Rule 84 and we have *Davis*, we have *Facebook* case and

10   the agreement.

11           Now it wasn't touched upon here today but the

12   argument that seems to have been raised by codefendants

13   relates to Rule 408.  And that 408 permits settlement

14   negotiations to be utilized for purposes of proving an oral

15   agreement.  There's also a case that was referred to the

16   *Alternate Dispute Resolution Act* which has built into the

17   Act some confidentiality.  Those were positive for the

18   proposition that the confidentiality could be violated.

19           But we cited a New York District Court case right

20   on all fours in the sense that it dealt with both the 408

21   issue and the ADR issue, and said because there is a

22   confidentiality agreement which is broader than 408 and the

23   ADR confidentiality the evidence in that particular, I

24   believe it was a motion in limine should be stricken and

25   that's the *Deluca* case.  So it's our position, Your Honor,

1    that this should never have been brought before Your Honor.

2           The frustrating part about making that argument

3    Your Honor is that it makes it look as though we're trying

4    to hide behind confidentiality and avoid the merits which I

5    submit to you we are not, okay.  And that there was

6    substantial evidence that was not presented, most pointedly

7    a memorandum from the mediator in this motion until we

8    brought it, until we brought it forth.

9           So for that reason that is there's no written

10   agreement which is clear -- I understood counsel to say and

11   I hope he was misspeaking here about signing off on some

12   agreement, okay.  There was no signed agreement in

13   connection with this matter.  And I can say there was no

14   signed agreement Your Honor.  And we appeared before you

15   January 5th, and said we had an agreement in principle which

16   gives you some idea without getting into the facts of this

17   case as to what must have transpired during that time.

18          So I guess at this point Your Honor before I

19   violate the confidentiality I wondered whether the Court was

20   going to rule on the issue of the application of Rule 84, if

21   not 84 the Facebook argument with regard to the

22   confidentiality agreement.

23          THE COURT:  Anything else in reply before I rule?

24          MR. REKLATIS:  Yes, Your Honor.  Your Honor, on

25   January 12th, we had an agreement.  We started planning

1   mediations.  We went to mediation.  We settled cases based

2   on the allocated percentages agreed to by the parties.

3   There was no dispute.  No one tried to renegotiate any of

4   that.  We dismissed cross-claims against each other.  We did

5   everything, you know.  And we dropped summary judgment

6   motions, motions on superseding cause.  We agreed not to

7   contest liability, to go to trial just on damages and we

8   went forward.

9          If it's not an agreement it's an estoppel.  We

10  relied to our detriment and we can't -- even if we don't go

11  back to the statement that WMATA made during the course of

12  the mediation and we just look at WMATA's proposal, their

13  proposed agreement Paragraph four which says, "Subrogation

14  for property damage."  We understood what that meant.  It's

15  unambiguous what it means.  We went forward with that carve

16  out to settle seven out of nine cases.

17         Then the rules changed two weeks later after we

18  finished the rounds of mediations and maybe were going to go

19  back for round two to try to settle with the parties who

20  were here today.  And we get something that basically is

21  clarified, but in fact, changed the terms of the agreement

22  completely by adding as I said business interruption and

23  money paid by WMATA not just money paid by its insurance

24  carrier subrogation claim.

25         So we had an agreement as of the 12th.  WMATA

1   signed off on it on the 18th.  No one changed that carve out

2   provision.  No one signed it.  I never said anybody signed

3   it, but at the very least as we were getting close to trial,

4   we were three weeks, four weeks from trial we have an

5   estoppel here.  We have a representation.  We have

6   detrimental reliance.  And we're entitled to relief for that

7   when the rules changed.  When a representation is made and a

8   representation is then withdrawn after the three defendants

9   relied upon it.

10          THE COURT:  How do you deal with the

11  confidentiality agreement that was reached by the parties?

12  Because it seems to me that the, and I'm not suggesting bad

13  faith, but the information that you present to me in support

14  of your position it seems to me has in fact breached that

15  confidentiality agreement.  Because as I understand it the

16  information regarding the mediation of the parties were

17  involved in that none of that information would be brought

18  to anyone's attention including mine.

19          MR. REKLATIS:  Well the mediation ended and the

20  mediator was told his services were no longer needed as of

21  January 5th.  And --

22          THE COURT:  So you're saying that the

23  confidentiality agreement ended at that point?

24          MR. REKLATIS:  Yes.  And then we went forward with

25  the various drafts of the settlement agreement.  We had

1    really no negotiations on these three material terms at that

2    point, we just prepared an agreement.  And then in light of

3    that agreement we began to contact the plaintiffs and try to

4    settle these cases and very successfully.  We settled seven

5    out of nine of them.

6           And based on these allocation formulas -- and the

7    addition to the carve out really changes the terms of the

8    deal and changes the economic terms of the deal.  And at the

9    very least we have an estoppel here.  We have detrimental

10   reliance upon a representation by WMATA as to what its carve

11   out was limited to.

12          MR. GANDY:  Your Honor, I'd like to be able to

13   respond to that.

14          MR. REKLATIS:  Well, do you have any questions for

15   me, Your Honor?

16          THE COURT:  No, I don't.

17          MR. REKLATIS:  Okay.

18          MR. GANDY:  Before counsel speaks there have been

19   some things alleged here I just want to address it.

20          THE COURT:  Go ahead, briefly.

21          MR. GANDY:  Your Honor, we've just gone through

22   all -- I'm sitting here defenseless, okay, because I'm not

23   talking about issues regarding the mediation.  This idea

24   that the mediation was over is nonsense.  Okay.  *Davis* says

25   the drafts are part of the mediation.  Those drafts are part

1    of the mediation.  So if counsel is permitted to argue the

2    confidential information and give incomplete information

3    here about reliance and estoppel, I'm prejudiced by this,

4    Judge.  And I want to be able to get into that I guess at

5    this point unless the Court is going to take a different

6    position here.

7           I mean these facts are crafted in favor of

8    counsel.  Let me talk about the reliance issue here.  Your

9    Honor, when we waive summary judgment cross-claims and

10   liability you were told there was a problem and we needed to

11   go to Judge Facciola.  This was already on the table before

12   that happened.  So I don't know what's happening here in

13   terms of the arguments that are being made.

14          But what has been discussed by counsel, okay, goes

15   directly under the *Davis* case to matters that are the

16   subject of mediation.  And they are vigorously contested.

17   And I submit that the record that's been put before Your

18   Honor because I'm not able to argue has been incomplete.

19   Okay.  And in violation of both the private mediation

20   settlement agreement and the local rules which were argued

21   quite vigorously earlier here today.

22          So I'm not sure how you want me to proceed, Your

23   Honor.

24          THE COURT:  I'm going to take a short break.  I

25   need to give her a break.  Take a ten-minute break.

1    [Thereupon, recess taken at 3:23 p.m., resuming at

2    3:34 p.m.]

3    THE COURT:   In reference to the confidentiality

4 agreement as I understand that was an agreement that was

5 entered in to by all parties.   And were the plaintiffs also

6 a part of that confidentiality agreement?   Or was that just

7 an agreement between the defendants?

8    MR. REKLATIS:   Yes, Your Honor.

9    THE COURT:   Well, seems to me that there being no

10 dispute that there was a confidentiality agreement between

11 the parties that covered the mediation that was to and did

12 take place that that is the controlling agreement it seems.

13    If I were to conclude that that confidentiality

14 agreement did not encompass what is now being brought to my

15 attention in support of why this unsigned agreement should

16 be enforced that that would have a profound institutional

17 impact on the settlement process.   Because if the parties

18 were able to enter into a confidentiality agreement that

19 would preclude information being brought to the Court's

20 attention, which as I understand this agreement did, and now

21 permit that to be briefed and that information to be

22 brought to my attention in support of the theory that this

23 unexecuted agreement should be enforced that that would have

24 a significant impact on the ability of the parties to make

25 these type of agreements and use that agreement as a

1    backdrop for settlement or mediation discussions in cases.

2            And that being the case it seems to me everything

3    that's being brought to my attention as to why the agreement

4    should be enforced should not be before me for my

5    consideration.  And without that and there not being a

6    signed agreement that consummated what I'm being told was

7    agreed upon it seems to me there's nothing before me that

8    would be a basis for me to enforce an agreement.

9            MS. WOOLF:  Your Honor, may I be heard on that

10   point?

11           THE COURT:  Yes.  And it seems to me I agree with

12   Judge Lamberth that if there are subsequent agreements that

13   are drawn up for further negotiations that flow from the

14   settlement or the mediation that that's a part of the

15   mediation.  And it just seems to me that I undermine the

16   whole mediation settlement process if I were to permit this

17   information in light of the confidentiality agreement to

18   come to my attention in support of why the agreement that

19   was reached as a result of mediation should be enforced.

20           MS. WOOLF:  Your Honor, here's the distinction

21   that I think is present in this case.  On January 18th,

22   WMATA sent out an agreement.  That was agreement contained

23   its own confidential --

24           MR. GANDY:  Your Honor, I object again.  Your

25   Honor has just stated that drafts are part of this process.

1          THE COURT:  I think it seems to me that's an

2     ongoing part of the mediation settlement process.

3          MS. WOOLF:  Your Honor, in this case the parties

4     performed under an agreement which they all believed that

5     they had.  The parties entered in to millions of dollars

6     worth of settlement agreements with plaintiffs.  The parties

7     agreed to dismiss summary judgment motions.  The parties --

8          THE COURT:  Well, maybe we put those back on the

9     table to the extent that they relate to the dispute between

10    the parties about liability.

11         MS. WOOLF:  Your Honor, WMATA sent out an

12    agreement which contained a confidentiality provision.  One

13    of the exceptions to the confidentiality provision, one of

14    the reasons that was in the agreement upon which the other

15    parties relied was to enforce the terms of the agreement.

16    That is in the agreement that WMATA sent out on

17    January 18th, that all the parties then performed under.

18    And it wasn't until January 30th --

19         THE COURT:  Give me that again.

20         MS. WOOLF:  Your Honor, there was an agreement

21    sent out which was accepted by all parties.  It was WMATA's

22    agreement.  It contained a confidentiality provision.  That

23    confidentiality provision provided that all of the parties

24    to it, which were only the defendants and their counsel,

25    would keep confidential and not disclose any fact or

1    communication related to the agreement.  The exceptions to

2    this paragraph are number one, "As may be necessary to

3    administer or enforce the terms of the agreement."  That's

4    what we have here, Your Honor.

5         We have an agreement which all of the parties

6    accepted, all of the parties performed under.  All of the

7    parties relied on the three non-WMATA defendants to their

8    detriment.  And then on January 30th, we get a prov -- we

9    get a rewrite of a material term of that agreement, Section

10   IV, which instead of being a carve out for subrogation

11   claims, for property damage, which is a known quantity which

12   we knew exactly what it was because the NTSB had quantified

13   that claim.  Instead of that provision which was a carve

14   out, preservation of claims for subrogation claims which

15   means not WMATA claims but its insurer's claims for property

16   damage instead we get a rewrite of that provision, which is

17   subrogation claims for property, business interruption

18   claims and amounts paid by WMATA itself.

19        The third item amounts paid by WMATA itself

20   clearly could not be subrogation claims.  They're not

21   subrogation claims.  Business interruption isn't property

22   damage.  At that point in time the non-WMATA defendants had

23   entered into agreements with seven of the nine death

24   claimants, with a number of personal injury claimants.  They

25   had either paid or agreed to pay millions of dollars in

1   settlements believing that they knew what the carve out was

2   for.  But what happened instead is that after all of this

3   performance, this detrimental reliance we get a rewrite

4   which essentially more than doubled the carve out.

5           MR. GANDY:  I object, Your Honor.  Your Honor, I

6   can't stand and not defend myself when they're talking about

7   a draft on the 18th.  The Court has already noted that Judge

8   Lamberth talked about that as ongoing.  The Court is being

9   prejudiced.  I have facts that counterman these facts.

10  Okay.  It's not disputed that there's no agreement and that

11  there's not a confidentiality agreement.  I don't know what

12  to do, Your Honor.  I'm sitting here trying to play by the

13  rules and they are arguing their case.  I can't argue the

14  merits of my case.  It's not fair.

15          MS. WOOLF:  Your Honor, the confidentiality

16  provision in the agreement that WMATA sent contained an

17  exception for enforcing the agreement.  That's what we have

18  here.

19          MR. GANDY:  It is a draft, Your Honor.  We're

20  arguing drafts here.  And there's a claim that the draft --

21  if the draft were agreed to on the 18th, why didn't we have

22  it signed.  Because there were subsequent drafts and there

23  were lots of issues that were coming up and there were

24  changes in connection with what went on.  That's why the

25  rule exist as it does.

1          THE COURT:  Are you saying that there was no

2     agreed upon confidentiality agreement?

3          MR. GANDY:  I am saying -- well, there was an

4     agreed upon confidentiality agreement in mediation.  What

5     they're talking about is the confidentiality provision in a

6     draft not the written --

7          THE COURT:  So we're talking about two different.

8          MR. GANDY:  Yes, two different.  I don't why they

9     are talking about a confidentiality provision in a draft

10    which is pretty much standard procedure you know of a

11    mediated executed agreement but there's no agreement here.

12    And for me I now had to --

13         THE COURT:  So, and I would assume that there had

14    been a confidentiality agreement entered into by the parties

15    before mediation commenced?

16         MR. GANDY:  Absolutely.  It's attached to our

17    papers as an exhibit, Your Honor.  It's a signed agreement.

18    It's attached to our papers.

19         THE COURT:  That's what I was referencing that

20    confidentiality agreement that the parties has signed off

21    on.

22         MR. GANDY:  Right.

23         THE COURT:  And it troubles me that that agreement

24    was entered to.  It's a comprehensive agreement and to then

25    it seems to me try and circumvent that by saying that you've

1   got this subsequent confidentiality proposal in a draft that

2   somehow supersedes the earlier confidentiality agreement and

3   therefore opens the door to bring in information that

4   otherwise could not be brought in based upon that earlier

5   confidentiality agreement totally undermines the

6   effectiveness of that earlier agreement.

7           MR. ROSENTHAL:  Your Honor, if I might be heard,

8   and Bill I will try and apply your desires.

9           THE COURT:  Talk to me, don't talk to him.

10          MR. ROSENTHAL:  First, there is no 84 agreement

11  here.  There was not an 84 order.  There's no way, shape or

12  form there's an 84 order.  The Lambert decision does not

13  apply because there's no 84 order.  The expressed language

14  in the order is absolutely clear.  It says there's a

15  mediation between the plaintiffs and the defendants.  It

16  does not contemplate in any way, shape or form or order the

17  defendants to mediate among themselves.  That was something

18  that we decided to do and we pursued in a separate

19  contractual proceeding.

20          THE COURT:  But irrespective of that there is a

21  confidentiality agreement that was a part of that.

22          MR. ROSENTHAL:  Correct, Your Honor.  Next point,

23  if you look at our reply brief on 12 through 14, there's

24  various cases cited when the Court is permitted to entertain

25  evidence regarding the substance of the mediation.  They can

1    do that for two purposes --

2              THE COURT:  That's under Rule 408.

3              MR. ROSENTHAL:  That's under Rule 408 and also

4    under estoppel.  Rule 408 does not apply when there's a

5    dispute as to what was agreed to in the mediation which is

6    what we adhered to and where the parties are claiming

7    estoppel.  Evidence is also admissible with respect to what

8    occurred at mediation to the extent someone's claiming

9    estoppel which we are.

10             Your Honor, I can speak only to my client.  My

11   client really was not concerned about the plaintiff's cases.

12   We had already won one summary judgment motion.  We had two

13   other summary judgment motions both of which we felt very

14   confident about.  My client was more concerned about the

15   exposure to WMATA because WMATA was intending to bring

16   additional claims against us either in this proceeding as

17   cross-claims or in subsequent proceedings.  That was my

18   client's major concern.

19             My client agreed to waive its summary judgment and

20   agreed to waive liability in order to buy peace with WMATA.

21   And the way we did that is through a settlement agreement

22   where we thought we knew what the level of our exposure was.

23             THE COURT:  So why isn't the remedy to put back on

24   the table those summary judgment motions?

25             MR. ROSENTHAL:  I --

1          THE COURT:  As they -- not as they relate to the

2     plaintiffs but as they relate to the dispute that exist

3     between your client and WMATA.  Isn't that the appropriate

4     remedy to address your concern regard the estoppel rather

5     than enforcing this unexecuted agreement about proportioning

6     the damages?

7          MR. ROSENTHAL:  Well, again we're not in 84.  The

8     only required for a signed agreement is in the 84.  When

9     you're outside 84, it's abundantly clear a contract, we had

10    a oral, binding contract and it was reduced to writing.  It

11    was not signed.  So once we get out of 84, we're in a

12    totally different area.  And I think the case law is

13    abundantly clear we had an agreement.  We had everything but

14    a signed agreement but we certainly had an enforceable

15    agreement.

16         WMATA is solely resting its case on the

17    application of 84 here.  Again, to go back to your case

18    management order there is not a single word in your case

19    management order requiring the defendants to go to

20    mediation.

21         MR. GANDY:  Your Honor --

22         THE COURT:  Yes.

23         MR. GANDY:  -- if I may.  Thank you.  First of

24    all, with regard to your last question with regard to

25    summary judgment, as I said summary judgment was waived I

1    believe it was February 1st.  This issue was under

2    consideration at the time.  Okay.  And it was knowingly

3    done.  The waiver was a knowing waiver with this issue on

4    the table.  The parties proceeded to waive liability and

5    summary judgment in the face of that and asked the Court to

6    schedule a mediation, a mediation session in connection with

7    this.

8            So I would submit that putting summary judgment

9    back on the table is not appropriate in the face of a

10   knowing waiver.  I say that without still getting into the

11   issues of the mediation because at that time the defendants

12   respected the confidentiality and told the Court there was a

13   problem and indicated that it needed to be addressed.  And

14   notwithstanding that proceeded to waive cross-claims,

15   liability, trial and summary judgment.

16           Now it's very interesting to see the

17   codefendants -- and by the way, I'm arguing against three

18   now.  We started with one, but speak so authoritatively that

19   Rule 84 does not apply to this situation.  And that

20   obviously is for the Court to decide.  I would submit given

21   the history here that there would be every expectation that

22   Rule 84 would apply.  And if the codefendants didn't want

23   Rule 84 to apply having, the Court having placed it in two

24   different orders why didn't they address that with the

25   Court?  Isn't there a reasonable expectation under the

1   circumstances?  We addressed the Court on this issue.

2            Now let me say even if Rule 84 does not apply,

3   okay, counsel and the codefendants have never addressed the

4   *Facebook* case and the mediation agreement.  It's a Circuit

5   Court of Appeal that says in the face of a signed mediation

6   confidentiality agreement evidence cannot be presented.  So

7   it's not just premised on 84, which I submit is a reasonable

8   premise here.

9            The last thing I'll say about this and I think you

10  used words the last time there was time we looked at this.

11  Why isn't 84 instructive in this circumstances with regard

12  to a written agreement?  Okay.  Why is that not good sound

13  law, okay, in terms of confidentiality?  In light of what

14  we've gone through here this afternoon which is personally

15  troubling to me and required frankly Your Honor a lot of

16  restraint.  It's very difficult to be maligned, okay, and

17  not be able to defend yourself in this circumstance.  And

18  try to adhere to the law as I believe it's stated in *Davis*

19  and in the *Facebook* case.  Thank you.

20            MR. REKLATIS:  Your Honor, may I just have one

21  minute.  I know you've heard from a lot of people here.

22  But, first of all, we had this draft.  The only way the

23  unsigned agreement cannot be considered if this is under

24  Rule 84 and this is not under Rule 84.  Everybody relied

25  upon this draft.  Millions of dollars exchanged hands.  We

1    would settle cases and I would say to my client without

2    revealing the percentages.  Okay, here's a settlement for $2

3    million dollars.  Give me a check for X percentage of

4    $2 million.

5            And those were the allocation percentages that

6    were in that agreement that we agreed to.  We were operating

7    on the fly.  We were three weeks from trial.  We were trying

8    to settle these cases.  We were doing I think clearing the

9    docket.  Getting down to the cases that couldn't be settled

10   because the parties just couldn't get to a meeting of the

11   minds.  And we were moving, we were relying upon not just a

12   wink and a nod but an agreement.

13           THE COURT:  What about his position that this

14   issue that has, you know, now been brought to my attention

15   was known at the time the waivers took place?

16           MR. ROSENTHAL:  Your Honor, if I might speak to

17   that since I'm the one that advised you on that.

18           THE COURT:  Yes.

19           MR. ROSENTHAL:  You recall on the telephone I

20   advised you specifically that we were waiving with respect

21   to then filed cases.

22           THE COURT:  That's correct.

23           MR. ROSENTHAL:  And we were also not waiving with

24   respect to any future disputes alleging subrogation,

25   contribution or indemnity with respect to WMATA because this

1    was a pending issue.

2              MR. REKLATIS:  Your Honor, maybe the right

3    resolution here is to put that superseding cause motion back

4    on the table and we get a ruling on, we get a ruling on

5    allocation for the remaining cases.  We can't put the

6    toothpaste back in the tube for the cases that we settled

7    that we relied upon WMATA's representation and settled.

8    There's no way to issue an injunction and put the toothpaste

9    back in the tube, get the money back from the plaintiffs.

10   Those cases are gone.

11             We still have a few more.  We have some cases that

12   haven't been filed yet that may be filed.  Perhaps the best

13   thing to do is to put that superseding cause motion back on

14   the table and we'll argue it.  And we'll see whether, how

15   the what, let the chips fall where they may on that.  We'll

16   see how the allocation formula works out.

17             But, Your Honor, we relied on that agreement.  We

18   all had an agreement.  It was not signed but it was an

19   agreement.  WMATA's counsel called it an agreement in

20   principle.  On January 25th, we had an agreement.  And we

21   all relied on it.  I think it was a breach of that agreement

22   when WMATA changed it on the 30th.  If there wasn't an

23   agreement there was an estoppel.  We paid millions of

24   dollars in reliance upon that agreement.  Whatever the

25   summary judgment, whatever the waiver of liability we still

1    wrote out a lot of checks for all the death cases and all

2    the personal injury cases.  And even personal injury cases

3    that settled over the course of the last year through a

4    different procedure we agreed to pay our percentage based on

5    the allocation formula.

6         If we didn't have an agreement why were we all

7    paying our percentages?  Why were we all doing that?  We had

8    an enforceable agreement.  Believe me if I came back and

9    paid half the amount that I agreed to pay WMATA would be in

10   here saying we went through all these mediations and Ansaldo

11   is only paying half what it agreed to pay.  We can't go

12   forward with this.

13        So we had an operating agreement.  We all went

14   forward on it and millions of dollars exchanged hands.  And

15   it all happened after -- I understand Judge Lamberth's

16   opinion but it all happened after the mediator was

17   terminated, after we reached an agreement and after we put

18   the agreement in writing.  And then 12 days later after all

19   the mediations were done the rules changed.  And even

20   though -- you know, I think Ms. Woolf made a good point.  I

21   understand it wasn't a signed agreement, but it didn't have

22   to be unless it was a Rule 84 mediation.

23        Even WMATA put forward a confidentiality provision

24   that would have allowed it and anybody else to enforce the

25   agreement by using the terms of the agreement to enforce it.

1    I'm not going back and talking about what happened, what the

2    back and forth was in the mediation and what we relied upon

3    there.  But I mean Mr. Gandy is expressing a lot of outrage,

4    but it's pretty outrageous in my view and I'm trying to be

5    muted also, that when you ask for clarification of a point

6    you receive the clarification.  You move forward based on

7    that clarification.  You get into an agreement based on that

8    clarification and then the terms are changed.  There's a lot

9    of muted outrage on this side of the table also.

10                THE COURT:  Well I've got to rule.

11                MR. GANDY:  Your Honor --

12                THE COURT:  Very briefly.

13                MR. GANDY:  I was going to say the same thing's

14   happened again.  I want you to know that we categorically

15   deny the representations that have been made here.  There

16   are a lot of facts that come in to this, come in to play.

17                THE COURT:  You don't have to worry about that.

18   I'm not going to consider it.

19                MR. GANDY:  Thank you.

20                THE COURT:  There unquestionably is was the

21   execution of a confidentiality agreement that preceded the

22   mediation process that took place in this case.  It seems to

23   me that if I were not to respect that confidentiality

24   agreement despite this draft that was not consummated

25   regarding some separate or second confidentiality agreement

1    it seems to me that I severely impact the ability of cases

2    to be resolved by way of settlement or mediation.  And that

3    confidentiality agreement precludes this information being

4    brought to me.

5            So while Rule 84, I would agree doesn't strictly

6    apply here because it's not mediation within the court's

7    mediation program, I think it is instructive.  And I think

8    you know the wisdom of it is illustrated by what is taking

9    place here today.  And that is, obviously mediation

10   settlement discussions take place in private and there's

11   good reason for why those agreements or agreements that

12   related to that should be reduced to writing.  So that the

13   Court doesn't find itself in the position that I'm being

14   placed in now to try and reconstruct when I've got different

15   versions of what occurred what actually took place regarding

16   the mediation.

17           And I agree with WMATA's position that if there

18   were draft agreements that were drawn up after the mediation

19   process even if the actual mediator had been terminated that

20   that is a product of the mediation process and therefore

21   part and parcel of it.  And under those circumstances it

22   seems to me that for me to permit the information that's

23   being brought to me in support of the theory as to why I

24   should enforce an unsigned agreement even though I agree it

25   doesn't necessarily have to be signed because this is not

1   strictly a Rule 84 case.  Nonetheless, under the

2   circumstances I have to conclude that the confidentiality

3   agreement controls.  And therefore this information cannot

4   come to me in support of why this unconsummated agreement

5   should be enforced.

6         On the other hand, it seems to me that equitable

7   principles do come into play as it relates to the withdraw

8   of the summary judgment motions that were previously before

9   me in which the corporate defendants were taking exception

10  to their being held liable under the theory that WMATA

11  should be the sole party who should bear the responsibility

12  of what took place in this case.

13        And while it's argued by WMATA that there was a

14  waiver it does seem to me that equitable principles do cause

15  me to conclude that those motions under the circumstances

16  since there has not been a meeting of the minds at this

17  point, and yes, it was indicated that there was this

18  outstanding issue that was in play.  But I don't think under

19  the circumstances since that had not been resolved that that

20  should have the effect of constituting a waiver that

21  precludes the corporate defendants from reinstating their

22  otherwise withdrawn summary judgment motions that had

23  previously been before the Court.

24        So I will conclude that the confidentiality

25  agreement precludes me from entertaining the information

1    counsel seeks to bring to my attention in support of why

2    enforcement of the agreement should be ordered by the Court.

3    And therefore without that information there's no basis for

4    me to order enforcement absent a written agreement.   And I

5    would also conclude as I said that the waiver was not a

6    knowing and intelligent waiver under the circumstances.   And

7    therefore if the corporate defendants want to reinstate

8    their summary judgment motions and have that issue litigated

9    by the Court as to whether they bear any liability in this

10   case I will permit them to do that.

11         So is there a request that they be reinstated?   I

12   guess I would require that you submit something in writing

13   by the end of the week to that effect because that obviously

14   is going to necessity my getting these cases back on track

15   as far as summary judgment is concerned and having those

16   issues resolved before we have this trial on the 2nd of

17   April.

18         MR. ROSENTHAL:   We will do so, Your Honor.

19         THE COURT:   One moment.   And I would -- my law

20   clerk reminds me I would grant the motion filed by WMATA to

21   strike the filings that were submitted to the Court in

22   support of my ordering the enforcement of the agreement.

23   Thank you.

24         [Thereupon, the proceedings adjourned at 4:10

25         p.m.]

CERTIFICATE

1

2          I, Cathryn J. Jones, an Official Court Reporter

3   for the United States District Court of the District of

4   Columbia, do hereby certify that I reported, by machine

5   shorthand, the proceedings had and testimony adduced in the

6   above case.

7          I further certify that the foregoing 36 pages

8   constitute the official transcript of said proceedings as

9   transcribed from my machine shorthand notes.

10         In witness whereof, I have hereto subscribed my

11   name, this the 6th day of March, 2012.

12

13

14

15

16                         /s/_____
                           Cathryn J. Jones, RPR
17                         Official Court Reporter

18

19

20

21

22

23

24

25

**$**

**$2 [4]** 7/22 7/23 30/2 30/4
**$2 million [3]** 7/22 7/23 30/4

**/**

**/s [1]** 37/15

**1**

**10-314 [1]** 1/3
**1101 [1]** 1/21
**11th [1]** 1/13
**12 [2]** 25/23 32/18
**12th [2]** 14/25 15/25
**14 [1]** 25/23
**1700 [1]** 1/19
**18th [7]** 6/1 8/15 16/1 20/21 21/17 23/7 23/21
**1st [1]** 28/1

**2**

**20001 [3]** 1/13 1/16 2/3
**20006-3817 [1]** 1/19
**20036 [1]** 1/22
**2009 [1]** 1/5
**2012 [2]** 1/4 37/11
**20th [1]** 1/24
**21202 [1]** 1/25
**22 [1]** 1/5
**25th [2]** 5/7 31/20
**28 [1]** 1/4
**2nd [1]** 36/16

**3**

**30th [4]** 6/7 21/18 22/8 31/22
**314 [1]** 1/3
**333 [1]** 2/3
**36 [1]** 37/7
**3817 [1]** 1/19
**3:23 [1]** 19/1
**3:34 [1]** 19/2

**4**

**400 [1]** 1/13
**408 [7]** 13/13 13/13 13/20 13/22 26/2 26/3 26/4
**4:10 [1]** 36/24

**5**

**5th [2]** 14/15 16/21

**6**

**600 [2]** 1/16 1/22
**6521 [1]** 2/2
**6th [1]** 37/11

**7**

**700 [1]** 1/13

**8**

**84 [31]** 8/14 9/17 9/22 10/13 11/15 12/4 12/6 12/7 13/9 14/20 14/21 25/10 25/11 25/12 25/13 27/7 27/8 27/9 27/11 27/17 28/19 28/22 28/23 29/2 29/7 29/11 29/24 29/24 32/22 34/5 35/1

**9**

**9th [1]** 10/4

**A**

**ability [3]** 3/8 19/24 34/1
**able [5]** 17/12 18/4 18/18 19/18 29/17
**about [27]** 4/4 7/10 8/21 10/1 10/11 10/21 11/17 12/11 14/2 14/11 17/23 18/3 18/8 21/10 23/6 23/8 24/5 24/7

24/9 26/11 26/14 26/14 27/5 29/9 30/13 33/1 33/17
**above [1]** 37/6
**absent [1]** 36/4
**absolutely [2]** 24/16 25/14
**abundance [1]** 3/4
**abundantly [2]** 27/9 27/13
**accepted [4]** 5/1 5/9 21/21 22/6
**accident [1]** 7/2
**accord [1]** 7/24
**account [1]** 6/19
**Act [2]** 13/16 13/17
**acting [1]** 7/24
**actual [2]** 11/5 34/19
**actually [3]** 11/21 13/4 34/15
**adding [1]** 15/22
**addition [1]** 17/7
**additional [1]** 26/16
**address [3]** 17/17 27/4 28/24
**addressed [3]** 28/13 29/1 29/3
**adduced [1]** 37/5
**adhere [1]** 29/18
**adhered [1]** 26/6
**adjourned [1]** 36/24
**administer [1]** 22/3
**admissible [1]** 26/7
**ADR [2]** 13/21 13/23
**advised [3]** 12/2 30/17 30/20
**after [16]** 5/18 7/15 7/16 7/16 7/17 7/18 8/3 15/17 16/8 23/2 32/15 32/16 32/17 32/17 32/18 34/18
**afternoon [3]** 10/6 10/16 29/14
**again [6]** 6/13 20/24 21/19 27/7 27/17 33/14
**against [4]** 4/19 15/4 26/16 28/17
**agree [5]** 11/2 20/11 34/5 34/17 34/24
**agreed [21]** 7/7 7/19 7/22 8/1 8/3 8/24 15/2 15/6 20/7 21/7 22/25 23/21 24/2 24/4 26/5 26/19 26/20 30/6 32/4 32/9 32/11
**agreement [130]**
**agreements [8]** 12/9 19/25 20/12 21/6 22/23 34/11 34/11 34/18
**ahead [1]** 17/20
**aided [1]** 2/6
**all [35]** 5/12 6/1 6/3 6/21 7/15 7/16 8/3 8/9 8/9 8/14 9/24 13/20 17/22 19/5 21/4 21/17 21/21 21/23 22/5 22/6 22/6 23/2 27/24 29/22 31/18 31/21 32/1 32/1 32/6 32/7 32/10 32/13 32/15 32/16 32/18
**alleged [1]** 17/19
**alleging [1]** 30/24
**allocate [1]** 3/19
**allocated [1]** 15/2
**allocation [9]** 3/20 4/15 5/4 11/20 17/6 30/5 31/5 31/16 32/5
**allotment [1]** 3/12
**allowed [1]** 32/24
**already [4]** 12/18 11/18 23/7 26/12
**also [9]** 13/2 13/15 19/5 26/3 26/7 30/23 33/5 33/9 36/5
**Alstom [2]** 5/9 5/25
**Alternate [1]** 13/16
**although [4]** 6/14 9/8 9/12 11/10
**always [1]** 10/16
**am [1]** 24/3
**ambiguity [2]** 8/25 9/3
**ambiguous [2]** 8/19 8/20
**among [3]** 3/21 6/5 25/17
**amount [2]** 7/21 32/9
**amounts [2]** 22/18 22/19
**analogous [2]** 9/20 9/21
**Ansaldo [2]** 3/14 32/10
**answer [1]** 4/9
**answered [1]** 8/23

**an** 〔1〕 3/6 3/11 4/13 5/16 7/6 8/14
8/1/〔 9/23 12/16 15/3 17/14 21/25 25/16
30/24 36/9
**anybody [2]** 16/2 32/24
**anyone's [1]** 16/18
**anything [2]** 7/3 14/23
**Appeal [1]** 29/5
**APPEARANCES [1]** 1/10
**appeared [1]** 14/14
**appears [2]** 11/1 11/16
**application [2]** 14/20 27/17
**apply [12]** 11/16 12/4 12/7 12/7 25/8 25/13 26/4 28/19 28/22 28/23 29/2 34/6
**appreciate [1]** 11/9
**appropriate [3]** 11/5 27/3 28/9
**April [1]** 36/17
**are [23]** 3/25 6/17 8/5 12/20 14/5 17/25 17/25 18/7 18/13 18/15 18/16 20/12 20/13 20/25 22/2 23/13 24/1 24/9 26/6 26/9 31/10 33/8 33/16
**area [1]** 1/15 9/10 27/12
**argue [4]** 18/1 18/18 23/13 31/14
**argued [2]** 18/20 35/13
**arguing [3]** 23/13 23/20 28/17
**argument [4]** 11/12 13/12 14/2 14/21
**arguments [1]** 18/13
**Arinc [1]** 5/7
**ARISING [1]** 1/4
**as [39]**
**ask [1]** 33/5
**asked [4]** 4/22 4/24 8/22 28/5
**assume [1]** 24/13
**assuredly [1]** 4/9
**attached [2]** 24/16 24/18
**attention [8]** 16/18 19/15 19/20 19/22 20/3 20/18 30/14 36/1
**Attorney [1]** 1/23
**Attorney-at-Law [1]** 1/23
**authoritatively [1]** 28/18
**Authority [1]** 1/15
**Avenue [2]** 1/21 2/3
**avoid [1]** 14/4
**away [1]** 7/25

**B**

**back [18]** 8/13 8/25 12/11 15/11 15/19 21/8 26/23 27/17 28/9 31/3 31/6 31/9 31/9 31/13 32/8 33/1 33/2 36/14
**backdrop [1]** 20/1
**bad [3]** 7/3 7/3 16/12
**bag [1]** 3/23
**Baltimore [1]** 1/25
**based [6]** 15/1 17/6 25/4 32/4 33/6 33/7
**basically [3]** 4/15 6/24 15/20
**basis [4]** 5/1 8/7 20/8 36/3
**be [53]**
**bear [2]** 35/11 36/9
**because [25]** 6/20 6/25 7/2 7/3 10/8 10/12 10/25 11/8 12/18 13/21 16/12 16/15 17/22 18/18 19/17 22/12 23/22 25/13 26/15 28/11 30/10 30/25 34/6 34/25 36/13
**been [19]** 3/23 7/24 11/1 12/3 12/18 13/12 14/1 17/18 18/14 18/17 18/18 24/14 30/14 31/12 33/15 34/19 35/16 35/19 35/23
**before [17]** 1/8 4/17 10/19 11/5 14/1 14/14 14/18 14/23 17/18 18/11 18/17 20/4 20/7 24/15 35/8 35/23 36/16
**began [1]** 17/3
**behind [1]** 14/4
**being [14]** 18/13 19/9 19/14 19/19 20/2 20/3 20/5 20/6 22/10 23/8 34/3 34/13 34/23 35/10
**believe [6]** 12/2 12/24 13/24 28/1 29/18

**B**

believe... [1] 32/8
believed [3] 10/17 12/6 21/4
believing [1] 23/1
best [1] 31/12
between [10] 3/8 3/11 9/1 9/14 13/3 19/7 19/10 21/9 25/15 27/3
bifurcate [1] 12/1
Bill [2] 10/6 25/8
binding [2] 12/9 27/10
both [4] 11/24 13/20 18/19 26/13
breach [1] 31/21
breached [1] 16/14
break [3] 18/24 18/25 18/25
brief [1] 25/23
briefed [1] 19/21
briefly [2] 17/20 33/12
bring [3] 25/3 26/15 36/1
brings [1] 6/22
broader [1] 13/22
brought [13] 12/25 14/1 14/8 14/8 16/17 19/14 19/19 19/22 20/3 25/4 30/14 34/4 34/23
BRUCE [1] 1/11
built [1] 13/16
business [8] 6/10 6/22 7/1 7/1 8/12 15/22 22/17 22/21
buy [1] 26/20

**C**

called [1] 31/19
came [1] 32/8
CAMPBELL [1] 1/18
can [9] 6/24 7/4 7/10 8/15 8/18 10/20 14/13 25/25 26/10
can't [5] 15/10 23/6 23/13 31/5 32/11
cannot [3] 29/6 29/23 35/3
carrier [1] 15/24
carriers [1] 6/12
carve [15] 4/18 5/1 6/9 7/7 7/12 8/2 8/18 15/15 16/1 17/7 17/10 22/10 22/13 23/1 23/4
carved [2] 5/11 5/22
case [37] 3/3 6/25 7/5 7/21 9/24 10/13 10/19 10/21 11/12 11/22 11/22 11/23 12/14 13/4 13/5 13/9 13/15 13/19 13/25 14/17 18/15 20/2 20/21 21/3 23/13 23/14 27/12 27/16 27/17 27/18 29/4 29/19 33/22 35/1 35/12 36/10 37/6
cases [25] 1/4 6/2 6/3 7/16 7/19 11/25 15/1 15/16 17/4 20/1 25/24 26/11 30/1 30/8 30/9 30/21 31/5 31/6 31/10 31/11 32/1 32/2 32/2 34/1 36/14
cat [1] 3/23
categorically [1] 33/14
Cathryn [3] 2/1 37/2 37/16
cause [5] 7/18 15/6 31/3 31/13 35/14
caution [1] 3/5
certainly [1] 27/14
CERTIFICATE [1] 37/1
certify [2] 37/4 37/7
change [1] 9/2
changed [8] 8/17 15/17 15/21 16/1 16/7 31/22 32/19 33/8
changes [3] 17/7 17/8 23/24
characterize [1] 6/4
check [1] 30/3
checks [1] 32/1
chips [1] 31/15
chose [1] 12/22
Circuit [2] 13/4 29/4
circumstance [2] 10/15 29/17
circumstances [7] 29/1 29/11 34/21 35/2 35/15 35/19 36/6

circumvent [1] 24/25
cited [3] 13/3 13/19 25/24
claim [19] 4/19 4/22 4/25 5/10 5/13 5/19 5/21 5/21 6/11 6/17 6/21 6/22 6/22 7/1 7/8 13/5 15/24 22/13 23/20
claimants [2] 22/24 22/24
claiming [2] 26/6 26/8
claims [22] 4/16 5/10 5/19 6/11 7/12 7/13 8/11 8/19 15/4 18/9 22/11 22/14 22/14 22/15 22/15 22/17 22/18 22/20 22/21 26/16 26/17 28/14
clarification [8] 4/22 4/24 5/1 5/2 33/5 33/6 33/7 33/8
clarified [1] 15/21
clear [5] 12/15 14/10 25/14 27/9 27/13
clearing [1] 30/8
clearly [1] 22/20
clerk [2] 9/9 36/20
client [6] 26/10 26/11 26/14 26/19 27/3 30/1
client's [1] 26/18
close [1] 16/3
codefendants [5] 12/22 13/12 28/17 28/22 29/3
come [6] 11/2 20/18 33/16 33/16 35/4 35/7
coming [1] 23/23
commenced [1] 24/15
communication [1] 22/1
company [2] 5/20 7/13
completely [1] 15/22
comprehensive [1] 24/24
computer [1] 2/6
computer-aided [1] 2/6
conceivably [1] 3/7
concern [2] 26/18 27/4
concerned [3] 26/11 26/14 36/15
concerns [2] 3/4 11/8
conclude [5] 19/13 35/2 35/15 35/24 36/5
conclusion [1] 4/14
confident [1] 26/14
confidential [8] 8/15 10/9 11/3 11/11 13/7 18/2 20/23 21/25
confidentiality [48]
Connecticut [1] 1/21
connection [5] 12/12 12/21 14/13 23/24 28/6
consider [1] 33/18
consideration [2] 20/5 28/2
considered [1] 29/23
constitute [1] 37/8
constituting [1] 35/20
Constitution [1] 2/3
consummated [3] 9/14 20/6 33/24
contact [1] 17/3
contained [4] 20/22 21/12 21/22 23/16
contemplate [1] 25/16
contemplated [2] 9/23 12/3
contest [2] 8/8 15/7
contested [1] 18/16
context [3] 10/9 9/12 11/21
contract [3] 9/11 27/9 27/10
contracted [1] 10/2
contractual [1] 25/19
contribution [1] 30/25
control [1] 11/18
controlling [1] 19/12
controls [1] 35/3
convince [1] 10/24
corporate [4] 11/4 35/9 35/21 36/7
correct [3] 3/16 25/22 30/22
could [4] 13/8 13/18 22/20 25/4
couldn't [2] 30/9 30/10

cc     l [10] 11/10 14/10 17/18 18/1 18/u 18/14 21/24 29/3 31/19 36/1
counterman [1] 23/9
course [2] 15/11 32/3
court [36] 1/1 2/1 2/2 2/2 9/8 9/15 10/11 10/12 11/17 12/2 12/3 12/5 12/15 12/17 13/7 13/19 14/19 18/5 23/7 23/8 25/24 28/5 28/12 28/20 28/23 28/25 29/1 29/5 34/13 35/23 36/2 36/9 36/21 37/2 37/3 37/16
court's [2] 19/19 34/6
covered [2] 13/6 19/11
crafted [1] 18/7
cross [6] 4/16 9/2 15/4 18/9 26/17 28/14
cross-claims [5] 4/16 15/4 18/9 26/17 28/14

**D**

D.C [6] 1/4 1/13 1/16 1/19 1/22 2/3
damage [16] 3/12 5/11 5/13 5/16 5/19 5/20 6/10 6/20 7/13 8/11 8/20 9/5 15/14 22/11 22/16 22/22
damages [2] 15/7 27/6
Dann [1] 1/24
Davis [9] 10/13 10/19 11/12 12/14 12/23 13/9 17/24 18/15 29/18
day [1] 37/11
days [2] 7/15 32/18
deal [8] 6/13 6/16 7/23 7/25 10/17 16/10 17/8 17/8
dealt [1] 13/20
death [3] 6/2 22/23 32/1
December [3] 10/1 10/3 10/4
December 9th [1] 10/4
decide [5] 3/8 6/18 6/19 8/15 28/20
decided [2] 12/1 25/18
decision [2] 8/8 25/12
defend [2] 23/6 29/17
defendants [21] 1/11 3/9 3/15 3/16 4/19 5/12 7/7 9/23 11/4 16/8 19/7 21/24 22/7 22/22 25/15 25/17 27/19 28/11 35/9 35/21 36/7
defenseless [1] 17/22
defined [1] 9/11
Deluca [1] 13/25
deny [1] 33/15
desires [1] 25/8
despite [2] 12/24 33/24
details [1] 6/14
detriment [2] 15/10 22/8
detrimental [2] 16/6 17/9 23/3
DeVries [1] 1/24
Dicker [1] 1/12
did [6] 9/13 15/4 19/11 19/14 19/20 26/21
didn't [7] 9/18 9/22 23/21 28/22 28/24 32/6 32/21
different [10] 5/12 9/9 9/12 18/5 24/7 24/8 27/12 28/24 32/4 34/14
difficult [2] 10/7 29/16
directly [2] 8/23 18/15
disclose [1] 21/25
disclosure [1] 10/9
discuss [1] 12/23
discussed [4] 5/14 11/11 12/24 18/14
discussion [2] 10/8 12/18
discussions [5] 3/6 4/5 11/24 20/1 34/10
dismiss [1] 12/2
dismissed [2] 4/16 15/4
dispute [6] 13/16 15/3 19/10 21/9 26/5 27/2
disputed [1] 23/10
disputes [1] 30/24
distinction [1] 20/20
DISTRICT [7] 1/1 1/9 2/2 13/19 37/3

## D

**DISTRICT... [1]** 37/3
**do [14]** 6/8 6/15 10/3 16/10 17/14 23/12
  25/18 26/1 31/13 35/7 35/14 36/10
  36/18 37/4
**docket [2]** 1/3 30/9
**document [1]** 5/25
**does [9]** 11/16 12/7 23/25 25/12 25/16
  26/4 28/19 29/2 35/14
**doesn't [4]** 8/12 34/5 34/13 34/25
**doing [2]** 30/8 32/7
**dollars [8]** 7/22 7/23 21/5 22/25 29/25
  30/3 31/24 32/14
**don't [16]** 3/3 3/24 4/24 6/4 8/13 9/6
  10/24 12/23 15/10 17/16 18/12 23/11
  24/8 25/9 33/17 35/18
**done [2]** 28/3 32/19
**door [1]** 25/3
**doubled [1]** 23/4
**down [3]** 7/1 7/2 30/9
**draft [12]** 5/8 23/7 23/19 23/20 23/21
  24/6 24/9 25/1 29/22 29/25 33/24 34/18
**drafts [8]** 12/19 12/20 16/25 17/25 17/25
  20/25 23/20 23/22
**drawing [1]** 3/18
**drawn [2]** 20/13 34/18
**dropped [5]** 7/16 7/17 8/7 8/8 15/5
**during [5]** 3/6 5/14 8/20 14/17 15/11

## E

**each [1]** 15/4
**earlier [4]** 18/21 25/2 25/4 25/6
**early [1]** 10/3
**economic [2]** 3/20 17/8
**economy [1]** 7/4
**Edelman [1]** 1/12
**effect [2]** 35/20 36/13
**effectiveness [1]** 25/6
**either [3]** 12/23 22/25 26/16
**else [3]** 7/4 14/23 32/24
**Elser [1]** 1/12
**email [2]** 5/5 5/7
**encompass [1]** 19/14
**end [1]** 36/13
**ended [2]** 16/19 16/23
**enforce [7]** 9/16 20/8 21/15 22/3 32/24
  32/25 34/24
**enforceable [2]** 9/15 27/14 32/8
**enforced [5]** 19/16 19/23 20/4 20/19
  35/5
**enforcement [3]** 36/2 36/4 36/22
**enforcing [2]** 23/17 27/5
**enough [1]** 12/22
**enter [2]** 5/23 19/18
**entered [5]** 19/5 21/5 22/23 24/14 24/24
**entertain [1]** 25/24
**entertaining [1]** 35/25
**entire [1]** 6/25
**entitled [2]** 10/17 16/6
**equitable [2]** 35/6 35/14
**escalators [1]** 7/3
**especially [1]** 10/18
**Esquire [6]** 1/11 1/11 1/14 1/17 1/18
  1/20
**essentially [2]** 3/19 23/4
**estoppel [9]** 15/9 16/5 17/9 18/3 26/4
  26/7 26/9 27/4 31/23
**even [10]** 5/5 12/13 12/24 15/10 29/2
  32/2 32/19 32/23 34/19 34/24
**EVENTS [1]** 1/4
**ever [2]** 3/11 12/4
**every [1]** 28/21
**Everybody [2]** 7/24 29/24
**everything [4]** 7/5 15/5 20/2 27/13

**evidence [7]** 12/16 13/8 13/23 14/6
  25/25 26/7 29/6
**exactly [1]** 22/12
**except [1]** 8/1
**exception [2]** 23/17 35/9
**exceptions [2]** 21/13 22/1
**exchanged [2]** 29/25 32/14
**executed [2]** 13/3 24/11
**execution [1]** 33/21
**exhibit [1]** 24/17
**exist [2]** 23/25 27/2
**exists [1]** 3/8
**expectation [2]** 28/21 28/25
**expert [1]** 7/4
**explained [1]** 8/21
**explains [1]** 8/23
**explored [1]** 8/21
**exposure [2]** 26/15 26/22
**expressed [1]** 33/3
**expressing [1]** 33/3
**extent [3]** 3/23 21/9 26/8

## F

**Facciola [1]** 18/11
**face [3]** 28/5 28/9 29/5
**Facebook [5]** 13/4 13/9 14/21 29/4
  29/19
**fact [4]** 12/25 15/21 16/14 21/25
**factor [1]** 6/21
**facts [5]** 14/16 18/7 23/9 23/9 33/16
**factual [1]** 10/22
**fair [1]** 23/14
**faith [1]** 16/13
**fall [1]** 31/15
**far [1]** 36/15
**favor [1]** 18/7
**February [2]** 1/4 28/1
**February 1st [1]** 28/1
**felt [1]** 26/1
**few [1]** 31/11
**Fifth [1]** 1/16
**file [1]** 11/3
**filed [5]** 11/6 30/21 31/12 31/12 36/20
**filings [1]** 36/21
**find [3]** 9/5 10/16 34/13
**finished [1]** 15/18
**first [7]** 3/10 5/8 10/18 11/2 25/10 27/23
  29/22
**Flanagan [1]** 11/22
**Floor [1]** 1/24
**flow [1]** 20/13
**flowed [1]** 12/16
**fly [1]** 30/7
**foregoing [1]** 37/7
**forget [3]** 7/9 7/10 9/18
**form [2]** 25/12 25/16
**formula [2]** 31/16 32/5
**formulas [1]** 17/6
**FORT [1]** 1/4
**forth [4]** 12/5 12/11 14/8 33/2
**forward [11]** 5/2 5/3 8/4 8/7 15/8 15/15
  16/24 32/12 32/14 32/23 33/6
**found [1]** 9/3
**four [2]** 15/13 16/4
**fours [1]** 13/20
**frankly [1]** 29/15
**fraud [2]** 13/5 13/6
**frustrating [1]** 14/2
**fungible [1]** 6/16
**further [2]** 20/13 37/7
**future [1]** 30/24

## G

**GANDY [3]** 1/11 10/6 33/3
**general [3]** 5/12 5/22 8/1

**get ; [1]** 10/14
**get [¹⁹]** 4/4 6/14 9/3 15/20 18/4 22/8
  22/9 22/16 23/3 27/11 30/10 31/4 31/4
  31/9 33/7
**getting [6]** 9/25 14/16 16/3 28/10 30/9
  36/14
**give [4]** 18/2 18/25 21/19 30/3
**given [1]** 28/20
**gives [1]** 14/16
**giving [1]** 12/10
**go [13]** 4/12 4/23 8/13 8/25 10/2 15/7
  15/10 15/18 17/20 18/11 27/17 27/19
  32/11
**goes [3]** 8/23 12/12 18/14
**going [20]** 3/14 3/14 3/21 4/7 4/12 4/15
  4/16 4/23 5/23 6/4 6/14 6/19 14/20
  15/18 18/5 18/24 33/1 33/13 33/18
  36/14
**gone [4]** 5/3 17/21 29/14 31/10
**good [4]** 10/6 29/12 32/20 34/11
**Goodell [1]** 1/24
**got [4]** 9/11 25/1 33/10 34/14
**grant [1]** 36/20
**guess [4]** 3/10 14/18 18/4 36/12

## H

**had [32]** 3/2 5/6 7/11 7/18 8/3 11/14
  13/8 14/15 14/25 15/25 16/25 21/5
  22/12 22/22 22/25 24/12 24/13 26/12
  26/12 27/9 27/13 27/13 27/14 29/22
  31/18 31/20 32/7 32/13 34/19 35/19
  35/22 37/5
**half [2]** 32/9 32/11
**hand [1]** 35/6
**hands [2]** 29/25 32/14
**happened [8]** 7/9 7/10 18/12 23/2 32/15
  32/16 33/1 33/14
**happening [1]** 18/12
**has [14]** 3/23 5/18 7/24 7/25 10/12
  13/16 16/14 18/14 18/18 20/25 23/7
  24/20 30/14 35/16
**have [54]**
**haven't [2]** 11/7 31/12
**having [4]** 12/5 28/23 28/23 36/15
**he [1]** 14/11
**He's [1]** 4/4
**heard [42]** 12/10 20/9 25/7 29/21
**HEARING [1]** 1/7
**hearings [1]** 12/3
**held [1]** 35/10
**her [1]** 18/25
**here [34]** 7/8 9/18 9/22 12/11 12/19 13/3
  13/11 14/11 15/20 16/5 17/9 17/19
  17/22 18/3 18/6 18/8 18/12 18/21 22/4
  23/12 23/18 23/20 24/11 25/11 27/17
  28/21 29/8 29/14 29/21 31/3 32/10
  33/15 34/6 34/9
**here's [2]** 20/20 30/2
**hereby [1]** 37/4
**hereto [1]** 37/10
**hide [1]** 14/4
**him [1]** 25/9
**himself [1]** 4/8
**his [4]** 3/4 11/12 16/20 30/13
**history [2]** 9/1 28/21
**Honor [54]**
**Honor's [1]** 11/16
**HONORABLE [1]** 1/8
**hope [1]** 14/11
**how [4]** 16/10 18/22 31/14 31/16
**However [1]** 11/7

## I

**I'd [1]** 17/12
**I'll [1]** 29/9

**I**

I'm [24] 3/13 3/14 4/6 4/12 4/14 4/23 6/14 6/19 12/10 16/12 17/22 17/22 18/3 18/18 18/22 18/24 20/6 23/12 28/17 30/17 33/1 33/4 33/18 34/13
I've [2] 33/10 34/14
idea [2] 14/16 17/23
illustrated [1] 34/8
imagine [2] 6/24 7/4
impact [3] 19/17 19/24 34/1
impartial [1] 10/23
important [1] 6/15
importantly [1] 12/13
inappropriate [1] 12/19
include [1] 8/12
including [2] 10/22 16/18
incomplete [2] 18/2 18/18
inconsistent [1] 11/19
indemnity [1] 30/25
indicated [2] 28/13 35/17
information [20] 10/10 10/22 11/4 11/8 11/11 13/6 16/13 16/16 16/18 17/22 19/19 19/21 20/17 25/3 34/3 34/22 35/3 35/25 36/3
injunction [1] 31/8
injury [9] 5/17 5/21 6/3 6/9 6/17 7/14 22/24 32/2 32/2
instance [1] 10/18
instead [4] 22/10 22/13 22/16 23/2
institutional [1] 19/16
instructive [3] 11/13 29/11 34/7
insulated [1] 12/17
insurance [4] 5/16 5/20 7/13 15/23
insured [1] 5/18
insurer [1] 5/18
insurer's [1] 22/15
intelligent [1] 36/6
intending [1] 26/15
interesting [1] 28/16
Interestingly [1] 12/22
interruption [7] 6/11 6/22 7/1 8/12 15/22 22/17 22/21
introduction [1] 12/16
involved [2] 10/9 16/17
irrespective [1] 25/20
is [76]
isn't [5] 22/21 26/23 27/3 28/25 29/11
issue [25] 3/8 3/12 4/17 4/17 4/21 8/20 8/23 9/3 9/6 9/12 11/20 11/24 12/4 13/21 13/21 14/20 18/8 28/1 28/3 29/1 30/14 31/1 31/8 35/18 36/8
issued [2] 9/19 9/24
issues [7] 8/9 8/10 10/12 17/23 23/23 28/11 36/16
it [86]
it's [22] 6/15 9/20 9/21 13/25 15/9 15/9 15/14 23/10 23/14 24/16 24/17 24/18 24/24 27/9 28/16 29/4 29/7 29/16 29/18 33/4 34/6 35/13
item [1] 22/19
its [7] 5/18 15/23 17/10 20/23 22/15 26/19 27/16
itself [3] 22/18 22/19 34/13
IV [1] 22/10

**J**

January [12] 5/7 6/1 6/7 8/15 14/15 14/25 16/21 20/21 21/17 21/18 22/8 31/20
January 12th [1] 14/25
January 18th [4] 6/1 8/15 20/21 21/17
January 30th [3] 6/7 21/18 22/8
January 5th [2] 14/15 16/21
JOHN [1] 1/17

**Jones [3]** 2/1 37/2 37/16
JUDGE [9] 1/8 1/9 9/13 12/21 18/4 18/11 20/12 23/7 32/15
judgment [19] 7/18 8/8 15/5 18/9 21/7 26/12 26/13 26/19 26/24 27/25 27/25 28/5 28/8 28/15 31/25 35/8 35/22 36/8 36/15
judgments [1] 7/17
jump [1] 3/16
JUNE [2] 1/5 10/1
just [17] 4/4 6/12 10/8 11/11 15/7 15/12 15/23 17/2 17/19 17/21 19/6 20/15 20/25 29/7 29/20 30/10 30/11

**K**

keep [1] 21/25
kind [1] 7/8
kinds [1] 8/9
knew [3] 22/12 23/1 26/22
know [11] 3/3 3/24 15/5 18/12 23/11 24/10 29/21 30/14 32/20 33/14 34/8
knowing [3] 28/3 28/10 36/6
knowingly [1] 28/2
known [2] 22/11 30/15

**L**

Lambert [1] 25/12
Lamberth [4] 9/13 12/21 20/12 23/8
Lamberth's [1] 17/11
language [1] 25/13
large [1] 6/3
last [4] 27/24 29/9 29/10 32/3
later [4] 7/15 8/3 15/17 32/18
law [8] 1/23 9/9 9/10 9/11 27/12 29/13 29/18 36/19
lawyers [1] 5/6
laying [1] 11/12
least [4] 9/15 12/2 16/3 17/9
LeClair [1] 1/21
Leech [1] 1/24
let [4] 3/23 18/8 29/2 31/15
level [1] 26/22
liability [11] 6/25 8/9 11/18 15/7 18/10 21/10 26/20 28/4 28/15 31/25 36/9
liable [1] 35/10
light [3] 17/2 20/17 29/13
like [2] 7/5 17/12
limine [1] 13/24
limited [1] 17/14
LINDA [1] 1/23
line [2] 3/18 9/2
litigated [1] 36/8
little [1] 10/7
LLP [3] 1/12 1/18 1/24
local [3] 11/15 12/14 18/20
longer [1] 16/20
look [7] 5/16 8/13 8/25 10/14 14/3 15/12 25/23
looked [1] 29/10
looking [2] 6/16 8/5
lot [8] 9/10 10/20 29/15 29/21 32/1 33/3 33/8 33/16
lots [1] 23/23

**M**

machine [3] 2/5 37/4 37/9
made [6] 11/7 15/11 16/7 18/13 32/20 33/15
major [3] 3/20 7/17 26/18
make [2] 11/14 19/24
makes [1] 14/3
making [3] 4/20 11/12 14/2
maligned [1] 29/16
management [3] 9/24 27/18 27/19
March [1] 37/11

**M**

MA [1] 1/14
Marks [1] 10/3
material [3] 8/17 17/1 22/9
matter [2] 1/3 14/13
matters [1] 18/15
MATTHEW [1] 1/18
may [8] 4/2 12/2 20/9 22/2 27/23 29/20 31/12 31/15
maybe [3] 15/18 21/8 31/2
MC [1] 1/3
MD [1] 1/25
me [43]
mean [5] 6/24 6/24 9/10 18/7 33/3
means [3] 5/20 15/25 22/15
meant [2] 5/15 15/14
mediate [1] 25/17
mediated [3] 7/19 11/21 24/11
mediating [1] 6/6
mediation [67]
mediations [10] 6/1 7/15 8/4 9/25 11/20 12/5 15/1 15/18 32/10 32/19
mediator [8] 3/2 4/25 5/2 10/23 14/7 16/20 32/16 34/19
meeting [2] 30/10 35/16
memorandum [1] 14/7
merits [4] 10/19 10/21 14/4 23/14
Metropolitan [1] 1/15
METRORAIL [1] 1/4
might [2] 25/7 30/16
million [4] 7/22 7/23 30/3 30/4
millions [5] 21/5 22/25 29/25 31/23 32/14
minds [1] 30/11 35/16
mine [1] 16/18
minute [2] 18/25 29/21
misspeaking [1] 14/11
moment [1] 36/19
money [6] 6/11 6/16 8/13 15/23 15/23 31/9
month [1] 6/5
more [5] 12/13 12/17 23/4 26/14 31/11
Moskowitz [1] 1/12
most [3] 4/9 10/22 14/6
motion [13] 7/18 10/12 10/14 10/15 11/3 11/15 12/23 13/24 14/7 26/12 31/3 31/13 36/20
motions [10] 1/7 15/6 15/6 21/7 26/13 26/24 35/8 35/15 35/22 36/8
move [2] 7/25 33/6
moved [3] 5/2 5/3 11/25
moving [1] 30/11
Mr [1] 33/3
Mr. [2] 9/5 10/3
Mr. Marks [1] 10/3
Mr. Wallace [1] 5/5
Ms [1] 32/20
much [4] 3/5 10/8 10/21 24/10
must [1] 14/17
muted [2] 33/5 33/9
my [24] 3/8 7/13 9/9 11/8 19/14 19/22 20/3 20/4 20/18 23/14 26/10 26/10 26/14 26/17 26/19 30/1 30/14 33/4 36/1 36/14 36/19 36/22 37/9 37/10
myself [4] 3/5 10/7 11/7 23/6

**N**

N.W [1] 2/3
name [1] 37/11
necessarily [2] 3/4 34/25
necessary [1] 22/2
necessity [1] 36/14
need [1] 18/25
needed [3] 16/20 18/10 28/13
negotiating [3] 6/13 6/16 9/1
negotiation [1] 12/12

**N**

negotiations [3]  13/14 17/1 20/13
never [3]  14/1 16/2 29/3
New [1]  13/19
next [2]  6/5 25/22
nightmare [3]  6/23 7/6 7/8
nine [4]  6/2 15/16 17/5 22/23
Ninth [1]  13/4
no [26]  1/3 4/6 4/10 7/6 7/25 8/17 9/22
  14/9 14/12 14/13 15/3 15/3 16/1 16/2
  16/20 17/1 17/16 19/9 23/10 24/1 24/11
  25/10 25/11 25/13 31/8 36/3
Nobody [1]  12/4
nod [1]  30/12
non [3]  3/15 22/7 22/22
non-WMATA [3]  3/15 22/7 22/22
none [1]  16/17
Nonetheless [1]  35/1
nonsense [1]  17/24
not [71]
noted [1]  23/7
notes [1]  37/9
nothing [2]  10/1 20/7
notwithstanding [1]  28/14
November [1]  10/1
now [15]  3/22 5/14 6/13 6/21 8/5 12/7
  13/11 19/14 19/20 24/12 28/16 28/18
  29/2 30/14 34/14
NTSB [1]  22/12
number [5]  11/15 12/25 13/2 22/2 22/24
NW [4]  1/13 1/16 1/19 1/21

**O**

object [2]  20/24 23/5
obviously [4]  9/10 28/20 34/9 36/13
occurred [3]  4/21 26/8 34/15
off [4]  5/25 14/11 16/1 24/20
official [4]  2/2 37/2 37/8 37/16
okay [19]  4/11 5/15 6/19 10/5 12/15 14/5
  14/12 17/17 17/22 17/24 18/14 18/19
  23/10 28/2 29/3 29/12 29/13 29/16 30/2
omitted [1]  10/22
once [1]  27/11
one [21]  1/24 3/10 3/20 5/6 7/25 8/2
  11/15 11/23 12/2 12/25 15/3 16/1 16/2
  21/12 21/13 22/2 26/12 28/18 29/20
  30/17 36/19
ones [2]  6/5 6/6
ongoing [2]  21/2 23/8
only [8]  6/8 8/24 9/23 21/24 26/10 27/8
  29/22 32/11
opens [1]  25/3
operating [2]  30/6 32/13
opinion [1]  32/16
oral [2]  13/14 27/10
order [10]  12/8 25/11 25/12 25/13 25/14
  25/16 26/20 27/18 27/19 36/4
ordered [1]  36/2
ordering [2]  10/2 36/22
orders [6]  9/18 9/24 11/17 11/17 12/6
  28/24
original [1]  12/23
other [5]  12/10 15/4 21/14 26/13 35/6
others [1]  11/22
otherwise [2]  25/4 35/22
our [16]  6/12 7/16 7/19 8/8 8/8 10/11
  10/14 10/20 13/25 15/10 24/16 24/18
  25/23 26/22 32/4 32/7
ourselves [1]  10/16
out [34]  1/4 3/4 3/23 4/18 5/1 5/11 5/22
  6/9 6/21 7/7 7/12 8/2 8/18 11/12 11/19
  12/8 13/4 15/16 15/16 16/1 15/5 17/7
  17/11 20/22 21/11 21/16 21/21 22/10
  22/14 23/1 23/4 27/11 31/16 32/1

**outrage [2]**  33/3 33/9
outrageous [1]  33/4
outside [1]  27/9
outstanding [1]  35/18
over [4]  7/16 11/18 17/24 32/3
own [1]  20/23

**P**

p.m [3]  19/1 19/2 36/25
pages [1]  37/7
paid [14]  5/19 5/20 6/12 6/12 7/13 7/19
  8/13 15/23 15/23 22/18 22/19 22/25
  31/23 32/9
panoply [1]  8/9
papers [3]  10/20 24/17 24/18
paragraph [2]  15/13 22/2
parcel [1]  34/1
part [11]  5/24 12/20 14/2 17/25 17/25
  19/6 20/14 20/25 21/2 25/21 34/21
particular [1]  13/23
particularly [1]  12/18
parties [33]  3/11 3/21 5/22 8/1 8/24 9/1
  9/14 13/3 15/2 15/19 16/11 16/16 19/5
  19/11 19/17 19/24 21/3 21/5 21/6 21/7
  21/10 21/15 21/17 21/21 21/23 22/5
  22/6 22/7 24/14 24/20 26/6 28/4 30/10
party [2]  8/17 35/11
pay [7]  3/21 6/18 7/22 22/25 32/4 32/9
  32/11
paying [2]  32/7 32/11
peace [1]  26/20
pending [1]  31/1
people [2]  6/17 29/21
percentage [6]  3/22 6/18 6/20 7/22 30/3
  32/4
percentages [9]  3/22 3/24 5/4 7/19 7/25
  15/2 30/2 30/5 32/7
performance [1]  23/3
performed [3]  21/4 21/17 22/6
Perhaps [1]  31/12
permit [4]  19/21 20/16 34/22 36/10
permits [1]  13/13
permitted [2]  18/1 25/24
personal [4]  6/3 22/24 32/2 32/2
personally [1]  29/14
physical [5]  5/17 5/21 6/9 6/17 7/14
place [10]  3/6 10/8 10/9 19/12 30/15
  33/22 34/9 34/10 34/15 35/12
placed [2]  28/23 34/14
plaintiff's [2]  11/21 26/11
plaintiffs [8]  9/25 13/5 17/3 19/5 21/6
  25/15 27/2 31/9
planning [1]  14/25
play [4]  23/12 33/16 35/7 35/18
pleading [1]  11/5
pleases [1]  10/11
point [15]  5/3 6/15 8/25 11/19 12/11
  14/18 16/3 17/2 18/5 20/10 22/22
  25/22 32/20 33/5 35/17
pointed [1]  12/8
pointedly [1]  14/6
points [1]  11/14
policy [1]  5/16
position [6]  13/25 16/14 18/6 30/13
  34/13 34/17
positive [1]  13/17
possible [1]  3/5
practical [1]  12/1
preceded [1]  33/21
precise [1]  9/12
precisely [2]  10/15 12/10
preclude [1]  19/19
precluded [1]  12/15
precludes [3]  34/3 35/21 35/25
prejudiced [2]  18/3 23/9

**pr    a [1]**  29/8
premised [1]  29/7
prepared [4]  5/7 5/25 7/11 17/2
present [2]  16/13 20/21
presented [5]  6/7 8/16 9/8 14/6 29/6
preservation [1]  22/14
preserve [3]  3/18 6/10 6/11
pretty [3]  12/15 24/10 33/4
previously [3]  12/5 35/8 35/23
principle [3]  5/6 14/15 31/20
principles [2]  35/7 35/14
private [3]  13/2 18/19 34/10
privately [1]  10/2
privy [1]  11/7
problem [2]  18/10 28/13
procedure [2]  24/10 32/4
proceed [2]  10/11 18/22
proceeded [2]  28/4 28/14
proceeding [2]  25/19 26/16
proceedings [5]  2/5 26/17 36/24 37/5
  37/8
process [8]  12/20 19/17 20/16 20/25
  21/2 23/22 34/19 34/20
produced [2]  2/6
product [1]  34/20
profound [1]  19/16
program [1]  34/7
proof [1]  7/20
properties [1]  5/13
property [20]  5/11 5/16 5/17 5/19 5/20
  5/21 6/10 6/10 6/17 6/20 7/13 7/14 8/11
  8/20 9/5 15/14 22/11 22/15 22/17 22/21
proportioning [1]  27/5
proposal [2]  15/12 25/1
proposed [1]  15/13
proposition [1]  13/18
prov [1]  22/8
provided [4]  4/25 21/23
proving [1]  13/14
provision [13]  6/8 12/14 16/2 21/12
  21/13 21/22 21/23 22/13 22/16 23/16
  24/5 24/9 32/23
provisions [1]  4/18
publicity [1]  7/3
pudding [1]  7/20
purposes [2]  13/14 26/1
pursuant [1]  10/10
pursued [1]  25/18
put [9]  18/17 21/8 26/23 31/3 31/5 31/8
  31/13 32/17 32/23
putting [1]  28/8

**Q**

quantified [1]  22/12
quantity [1]  22/11
question [5]  4/8 4/9 8/22 8/22 27/24
questions [2]  3/10 17/14
quite [2]  11/13 18/21

**R**

raise [1]  13/6
raised [3]  10/12 12/4 13/12
rather [1]  27/4
RE [1]  1/3
reach [1]  9/6
reached [6]  3/18 4/14 8/6 16/11 20/19
  32/17
reaching [1]  10/19
really [3]  17/1 17/7 26/11
reason [4]  11/4 12/9 14/9 34/11
reasonable [2]  28/25 29/7
reasons [1]  21/14
recall [1]  30/19
receive [1]  33/6
recess [1]  19/1

## R

reconstruct [1] 34/14
record [1] 18/17
recorded [1] 2/5
reduced [2] 27/10 34/12
reference [2] 9/11 19/3
referencing [1] 24/19
referred [1] 13/15
regard [6] 11/14 14/21 27/4 27/24 27/24
29/11
regarding [7] 3/3 3/12 16/16 17/23
25/25 33/25 34/15
REGGIE [1] 1/8
reinstate [1] 36/7
reinstated [1] 36/11
reinstating [1] 35/21
REKLAITIS [1] 1/20
Reklatis [1] 3/13
relate [3] 21/9 27/1 27/2
related [3] 9/25 22/1 34/12
relates [2] 13/13 35/7
release [1] 5/11
released [2] 4/16 4/19
releases [3] 5/12 5/22 8/1
reliance [6] 16/6 17/10 18/3 18/8 23/3
31/24
relied [9] 15/10 16/9 21/15 22/7 29/24
31/7 31/17 31/21 33/2
relief [1] 16/6
relying [1] 30/11
remainder [1] 11/25
remaining [1] 31/5
remedy [2] 26/23 27/4
reminds [1] 36/20
renegotiate [1] 15/3
reply [3] 12/24 14/23 25/23
reported [1] 37/4
Reporter [4] 2/1 2/2 37/2 37/16
represent [1] 3/14
representation [5] 16/5 16/7 16/8 17/10
31/7
representations [1] 33/15
request [2] 11/2 36/11
require [1] 36/12
required [2] 27/8 29/15
requires [1] 12/8
requiring [1] 27/19
resolution [2] 13/16 31/3
resolve [1] 8/24
resolved [3] 34/2 35/19 36/16
respect [5] 26/7 30/20 30/24 30/25
33/23
respected [1] 28/12
respond [1] 17/13
responsibility [2] 3/21 35/11
resting [1] 27/16
restrain [1] 10/7
restraint [1] 29/16
result [1] 20/19
results [1] 11/19
resuming [1] 19/1
retained [1] 4/18
retaining [1] 11/18
retry [1] 6/25
reveal [2] 3/22 11/3
revealing [1] 30/2
reviewed [1] 5/8
rewrite [4] 6/8 22/9 22/16 23/3
ridership [1] 7/2
right [5] 3/22 10/17 13/19 24/22 31/2
ROBERT [3] 1/11 1/20 3/13
Room [1] 2/2
ROSENTHAL [1] 1/17
round [1] 15/19

rounds [1] 15/18
RPR [2] 2/1 37/16
rule [29] 8/14 9/13 9/17 9/22 10/13
11/15 12/4 12/6 12/7 12/14 13/9 13/13
14/20 14/20 14/23 23/25 26/2 26/3 26/4
28/19 28/22 28/23 29/2 29/24 29/24
32/22 33/10 34/5 35/1
ruled [1] 13/7
rules [6] 8/2 15/17 16/7 18/20 23/13
32/19
ruling [2] 31/4 31/4
Ryan [1] 1/21

## S

said [13] 4/13 5/5 5/10 6/8 7/12 10/10
13/21 14/15 15/22 16/2 27/25 36/5 37/8
same [1] 33/13
say [11] 6/25 9/12 10/21 11/15 14/10
14/13 28/10 29/2 29/9 30/1 33/13
saying [6] 4/14 16/22 24/1 24/3 24/25
32/10
says [4] 15/13 17/24 25/14 29/5
schedule [1] 28/6
scheduling [2] 11/16 12/6
second [1] 33/25
Section [1] 22/9
securities [1] 13/5
see [4] 10/20 28/16 31/14 31/16
seeing [1] 11/25
seeks [1] 36/1
seem [1] 35/14
seems [15] 13/12 16/12 16/14 19/9
19/12 20/2 20/7 20/11 20/15 21/1 24/25
33/22 34/1 34/22 35/6
sense [1] 13/20
sent [8] 5/7 5/9 5/25 20/22 21/1 21/16
21/21 23/16
separate [2] 25/18 33/25
services [1] 16/20
session [1] 28/6
set [1] 12/5
settle [5] 15/16 15/19 17/4 30/1 30/8
settled [11] 5/3 5/5 7/16 7/21 11/23 15/1
17/4 30/9 31/6 31/7 32/3
settlement [15] 5/8 9/4 13/13 16/25
18/20 19/17 20/1 20/14 20/16 21/2 21/6
26/21 30/2 34/2 34/10
settlements [1] 23/1
settling [1] 6/2
seven [4] 6/2 15/16 17/4 22/23
severely [1] 34/1
shape [2] 25/11 25/16
share [1] 3/4
shield [2] 3/5 4/8
shoes [1] 5/18
short [1] 18/24
shorthand [2] 2/5 37/5 37/9
should [18] 6/18 11/2 12/4 12/17 13/24
14/1 14/15 19/23 20/4 20/4 20/19 34/12
34/24 35/5 35/11 35/11 35/20 36/2
side [2] 12/11 33/9
signed [23] 3/11 3/17 4/8 4/10 5/25 9/13
12/8 14/12 14/14 16/1 16/2 16/2 20/6
23/22 24/17 24/20 27/8 27/11 27/14
29/5 31/18 32/21 34/25
significant [2] 6/3 19/24
signing [1] 14/11
since [3] 30/17 35/16 35/19
single [1] 27/18
sitting [2] 17/22 23/12
situation [1] 28/19
smaller [1] 6/5
so [31] 3/7 4/21 5/12 5/19 7/9 8/24 9/2
11/18 12/25 13/8 13/25 14/9 14/18
15/25 16/22 18/1 18/12 18/22 24/7

2      26/23 27/11 28/8 28/18 29/6
32/,3 34/5 34/12 35/24 36/11 36/18
sole [1] 35/11
solely [1] 27/16
some [9] 3/23 6/15 11/18 13/17 14/11
14/16 17/19 31/11 33/25
somehow [2] 3/7 25/2
someone's [1] 26/8
something [3] 15/20 25/17 36/12
somewhat [2] 9/20 9/21
sort [1] 11/14
sound [1] 29/12
South [1] 1/24
speak [5] 3/14 3/15 26/10 28/18 30/16
speaks [1] 17/18
specifically [2] 11/17 30/20
stand [1] 23/6
standard [1] 24/10
started [2] 14/25 28/18
stated [2] 20/25 29/18
statement [2] 10/23 15/11
STATES [3] 1/1 1/9 37/3
steps [1] 5/18
still [3] 28/10 31/11 31/25
stop [1] 6/20
Strawn [1] 1/18
Street [1] 1/13 1/16 1/19 1/24
stricken [3] 12/21 13/8 13/24
strictly [2] 34/5 35/1
strike [3] 10/12 11/15 36/21
stuff [1] 8/14
subject [1] 18/16
submit [7] 12/19 14/5 18/17 28/8 28/20
29/7 36/12
submitted [1] 36/21
subrogation [18] 5/10 5/13 5/17 5/19 6/9
7/12 8/11 8/17 8/19 9/5 15/13 15/24
22/10 22/14 22/17 22/20 22/21 30/24
subscribed [1] 37/10
subsequent [4] 20/12 23/22 25/1 26/17
substance [4] 4/13 4/23 8/22 25/25
substantial [1] 14/6
successful [1] 6/3
successfully [1] 17/4
such [1] 7/7
suggesting [1] 16/12
suggestion [1] 4/23
Suite [2] 1/13 1/22
SULLIVAN [1] 1/6
summary [20] 7/17 7/17 8/8 15/5 18/9
21/7 26/12 26/13 26/19 26/24 27/25
27/25 28/5 28/8 28/15 31/25 35/8 35/22
36/8 36/15
supersedes [1] 25/2
superseding [4] 7/18 15/6 31/3 31/13
support [8] 16/13 19/15 19/22 20/18
34/23 35/4 36/1 36/22
sure [2] 9/21 18/22

## T

table [8] 18/11 21/9 26/24 28/4 28/9
31/4 31/14 33/9
taint [1] 3/7
take [6] 6/19 18/5 18/24 18/25 19/12
34/10
taken [2] 3/6 19/1
taking [2] 34/8 35/9
talk [6] 7/10 8/21 10/11 18/8 25/9 25/9
talked [3] 3/2 11/17 23/8
talking [6] 17/23 23/6 24/5 24/7 24/9
33/1
tangible [5] 5/17 5/21 6/9 6/17 7/14
telephone [1] 30/19
tells [1] 9/10
ten [1] 18/25

**T**

ten-minute [1] 18/25
term [5] 5/14 5/15 8/16 8/17 22/9
terminated [2] 32/17 34/19
terms [11] 3/20 15/21 17/1 17/7 17/8
18/13 21/15 22/3 29/13 32/25 33/8
testimony [1] 37/5
than [3] 13/22 23/4 27/5
Thank [7] 9/7 10/5 11/9 27/23 29/19
33/19 36/23
that [300]
that's [16] 9/11 12/9 12/25 13/25 18/17
20/3 20/14 21/1 22/3 23/17 23/24 24/19
26/2 26/3 30/22 34/22
their [11] 7/1 7/2 12/23 12/24 15/12
21/24 22/7 23/13 35/10 35/21 36/8
them [2] 17/5 36/10
themselves [1] 25/17
then [17] 4/17 5/2 5/9 6/7 8/13 9/3 11/24
15/17 16/8 16/24 17/2 21/17 22/8 24/24
30/21 32/18 33/8
theory [3] 19/22 34/23 35/10
there [58]
there's [20] 9/2 9/9 12/18 13/15 14/9
20/7 23/10 23/11 23/20 24/11 25/11
25/12 25/13 25/14 25/23 26/4 31/8 33/8
34/10 36/3
therefore [5] 25/3 34/20 35/3 36/3 36/7
Thereupon [2] 19/1 36/24
these [12] 7/6 7/16 7/19 17/1 17/4 17/6
18/7 19/25 23/9 30/8 32/10 36/14
they [23] 3/16 6/16 6/18 6/19 12/20
12/24 13/6 18/16 21/4 21/5 21/9 22/24
23/1 23/13 24/8 25/25 27/1 27/1 27/2
28/24 31/15 36/9 36/11
they're [4] 6/5 22/20 23/6 24/5
thing [2] 29/9 31/13
thing's [1] 33/13
things [1] 17/19
think [16] 5/15 6/14 9/18 10/11 10/20
10/24 20/21 21/1 27/12 29/9 30/8 31/21
32/20 34/7 34/7 35/18
third [1] 22/19
this [70]
those [17] 3/22 3/24 8/9 11/17 11/23
12/5 12/20 13/17 17/25 21/8 26/24 30/5
31/10 34/11 34/21 35/15 36/15
though [3] 14/3 32/20 34/24
thought [4] 4/5 4/7 11/5 26/22
three [11] 3/15 3/20 4/19 7/6 11/20 16/4
16/8 17/1 22/7 28/17 30/7
through [6] 6/1 17/21 25/23 26/21 29/14
32/3 32/10
time [7] 14/17 22/22 28/2 28/11 29/10
29/10 30/15
today [5] 12/11 13/11 15/20 18/21 34/9
told [4] 16/20 18/10 20/6 28/12
too [1] 10/21
took [6] 10/8 10/9 30/15 33/22 34/15
35/12
toothpaste [2] 31/6 31/8
totally [2] 25/5 27/12
TOTTEN [1] 1/4
touched [1] 13/11
track [1] 36/14
transcribed [1] 37/9
transcript [3] 1/7 2/5 37/8
transcription [1] 2/6
Transit [1] 1/15
transpired [1] 14/17
trial [6] 15/7 16/3 16/4 28/15 30/7 36/16
tried [5] 3/5 7/25 8/2 13/6 15/3
troubles [1] 24/23
troubling [1] 29/15

try [7] 6/5 15/19 17/3 24/25 25/8 29/18
34/14
trying [6] 3/17 6/18 14/3 23/12 30/7 33/4
tube [2] 31/6 31/9
Tuesday [1] 1/4
Twelve [1] 7/15
twice [1] 11/16
two [16] 6/4 6/4 8/3 8/5 11/14 11/22
12/3 12/6 13/2 15/17 15/19 24/7 24/8
26/1 26/12 28/23
type [1] 19/25

**U**

U.S [1] 2/2
unambiguous [7] 5/15 7/11 8/11 8/12
8/16 9/5 15/15
unconsummated [1] 35/4
under [20] 9/17 10/13 10/18 18/15 21/4
21/17 22/6 26/2 26/3 26/4 28/1 28/25
29/23 29/24 34/21 35/1 35/10 35/15
35/18 36/6
undermine [1] 20/15
undermines [1] 25/5
understand [6] 10/19 16/15 15/19 19/20
32/15 32/21
understood [2] 14/10 15/14
unexecuted [2] 19/23 27/5
unintentionally [1] 11/11
UNITED [3] 1/1 1/9 37/3
unless [2] 18/5 32/22
unquestionably [1] 33/20
unsigned [3] 19/15 29/23 34/24
unsuccessfully [1] 11/23
until [5] 3/15 3/16 14/7 14/8 21/18
unwittingly [1] 11/10
up [6] 3/16 6/22 12/25 20/13 23/23
34/18
upon [13] 13/11 16/9 17/10 20/7 21/14
24/2 24/4 25/4 29/25 30/11 31/7 31/24
33/2
us [2] 10/2 26/16
use [1] 19/25
used [2] 13/8 29/10
using [1] 32/25
utilized [1] 13/14
utilizing [1] 13/6

**V**

various [2] 16/25 25/24
versions [1] 34/15
very [7] 16/3 17/4 17/9 26/13 28/16
29/16 33/12
view [2] 10/8 33/4
vigorously [2] 18/16 18/21
violate [1] 11/9
violated [1] 13/18
violation [1] 18/19

**W**

waive [5] 18/9 26/19 26/20 28/4 28/14
waived [1] 27/25
waiver [8] 28/3 28/3 28/10 31/25 35/14
35/20 36/5 36/6
waivers [1] 30/15
waiving [2] 30/20 30/23
WALLACE [2] 1/11 5/5
WALTON [1] 1/8
want [13] 3/16 4/24 6/4 6/8 6/10 6/11
7/12 17/19 18/4 18/22 28/22 33/14 36/7
was [113]
was be [1] 7/9
Washington [7] 1/4 1/13 1/15 1/16 1/19
1/22 2/3
wasn't [4] 13/11 21/18 31/22 32/21
way [9] 7/6 8/24 25/11 25/16 26/21

ways [1] 8/5
we [163]
we'd [1] 9/3
we'll [3] 31/14 31/14 31/15
we're [6] 14/3 16/6 23/19 24/7 27/7
27/11
we've [2] 17/21 29/14
week [1] 36/13
weeks [5] 8/3 15/17 16/4 16/4 30/7
well [8] 9/11 16/19 17/14 19/9 21/8 24/3
27/7 33/10
went [13] 6/1 7/1 7/2 8/3 8/6 8/10 15/1
15/8 15/15 16/24 23/24 32/10 32/13
were [50]
what [46]
what's [1] 18/12
whatever [5] 3/17 7/21 11/4 31/24 31/25
when [15] 4/22 6/13 6/15 7/21 10/14
16/7 16/7 18/9 23/6 25/24 26/4 27/8
31/22 33/5 34/14
where [5] 5/17 11/20 26/6 26/22 31/15
whereof [1] 37/10
whether [5] 7/20 11/10 14/19 31/14 36/9
which [33] 5/8 9/18 10/16 12/19 13/4
13/16 13/22 14/4 14/10 14/15 15/13
18/20 19/20 21/4 21/12 21/14 21/21
21/24 22/5 22/10 22/11 22/11 22/13
22/14 22/16 23/4 24/10 26/5 26/9 26/13
29/7 29/14 35/9
while [2] 34/5 35/13
who [3] 3/21 15/19 35/11
whole [1] 20/16
why [17] 8/24 19/15 20/3 20/18 23/21
23/24 24/8 26/23 28/24 29/11 29/12
32/6 32/7 34/11 34/23 35/4 36/1
will [6] 6/25 7/22 25/8 35/24 36/10
36/18
WILLIAM [1] 1/11
Wilson [1] 1/12
wink [1] 30/12
Winston [1] 1/18
wisdom [1] 34/8
withdraw [1] 35/7
withdrawn [2] 16/8 35/22
within [2] 11/21 34/6
without [5] 14/16 20/5 28/10 30/1 36/3
witness [1] 37/10
witnesses [1] 7/4
WMATA [39]
WMATA's [5] 15/12 21/21 31/7 31/19
34/17
won [1] 26/12
won't [2] 3/22 8/21
wondered [1] 14/19
WOOLF [2] 1/23 32/20
word [1] 27/18
words [1] 29/10
works [1] 31/16
worry [1] 33/17
worth [1] 21/6
would [39]
wouldn't [1] 4/18
writing [4] 27/10 32/18 34/12 36/12
written [4] 14/9 24/6 29/12 36/4
wrote [1] 32/1

**Y**

Yeah [2] 4/1 4/1
year [1] 32/3
yes [10] 4/3 10/5 14/24 16/24 19/8 20/11
24/8 27/22 30/18 35/17
yet [1] 31/12
York [1] 13/19
you [46]

2L   29/22 31/8 34/2

**Y**

**you're [4]** 6/4 6/16 16/22 27/9
**you've [3]** 9/10 24/25 29/21
**your [62]**
**yourself [1]** 29/17

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the | ) |
| **FORT TOTTEN METRORAIL CASES** | ) |
| Arising Out of the Events of June 22, 2009 | ) |
| | ) |
| LEAD CASE: *Jenkins v. Washington* | ) Case No.: 1:10-mc-314 (RBW) (JMF) |
| *Metropolitan Area Transit Authority, et al.* | ) |
| | ) **FILED UNDER SEAL** |
| | ) |
| **THIS DOCUMENT RELATES TO:** | ) |
| **ALL CASES** | ) |
| | ) |

**[PROPOSED] ORDER**

Upon consideration of the Joint Defendants' Motion to Strike WMATA's Notice of

Reinstating Motions and Response to the Joint Defendants' March 2, 2012 Notice and the

Opposition thereto, it is hereby;

**ORDERED** that the Joint Defendants' Motion to Strike WMATA's Notice of

Reinstating Motions and Response to the Joint Defendants' March 2, 2012 Notice is denied in its

entirety; and it is further

**ORDERED** that WMATA's Dispositive Motions identified in its March 5, 2012 Notice

and Response are reinstated.

_____
Judge Reggie B. Walton

Copy:  Defense Counsel of Record

444006.2