**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|                                           |     |                                       |
|-------------------------------------------|-----|---------------------------------------|
| IN THE MATTER OF THE                      | )   |                                       |
| FORT TOTTEN METRORAIL CASES               | )   |                                       |
| Arising Out of the Events of June 22, 2009 | )   |                                       |
|                                           | )   |                                       |
|                                           | )   | Miscellaneous Case No. 10-314 (RBW)   |
| LEAD CASE: <u>Jenkins v. Washington</u>   | )   |                                       |
| <u>Metropolitan Area Transit Authority, et al.</u> | )   |                                       |
|                                           | )   |                                       |
| THIS DOCUMENT RELATES TO:                 | )   |                                       |
| ALL CASES                                 | )   |                                       |

_____)

## <u>MEMORANDUM OPINION</u>

These consolidated lawsuits arose out of a collision between two Washington

Metropolitan Area Transit Authority ("WMATA") trains that occurred on June 22, 2009,

resulting in the deaths of nine passengers and injuries to many others.  <u>See</u> Second Amended

Master Complaint ("Compl.") ¶¶ 156, 161.  Currently before the Court is the motion of WP

Company, LLC, which operates the Washington Post newspaper (the "Post"), for leave to

intervene and for access to court records.  Upon careful consideration of the parties'

submissions,[1] the Court will grant in part and deny in part the Post's motion.

---

[1] In addition to those already identified, the Court considered the following filings in rendering its decision: the Memorandum of Points and Authorities of the Washington Post in Support of Motion for Leave to Intervene and for Access to Court Records ("Post's Mem."); Defendant WMATA's Opposition to WP Company, LLC's Motion for Leave to Intervene and for Access to Court Records ("WMATA's Opp'n"); the Plaintiffs' Joint Response to the Washington Post's Motion for Leave to Intervene and for Access to Court Records ("Pls.' Resp."); the Corporate Defendants' Opposition to the Washington Post's Motion for Leave to Intervene and for Access to Court Records ("Corp. Defs.' Opp'n"); and the Reply of the Washington Post in Support of Motion for Leave to Intervene and for Access to Court Records ("Post's Reply").

## I.  Background

On June 22, 2009, two WMATA trains collided near the Fort Totten Metrorail station in

Washington, D.C.  Compl. ¶ 156.  The collision killed nine passengers and injured at least eighty

others.  Id. ¶ 161.  Numerous alleged victims of the train collision brought suit in this Court,

asserting various common law tort claims against WMATA and three of its equipment

contractors: Ansaldo STS USA, Inc., Alstom Signaling Inc., and ARINC, Inc. (collectively, the

"Corporate Defendants").  See id. ¶¶ 3-19.  After consolidating the cases, the Court designated a

common docket number, Miscellaneous Action No. 10-314, for all filings related to the Fort

Totten Metrorail cases.  See ECF No. 3 at 1.

Over the course of this litigation, the Court has granted the parties' requests to seal a

number of filings.  These sealed filings can be divided into the following three categories:

1.  Documents concerning settlement agreements involving minors that were filed with and

    approved by the Court.  See ECF Nos. 218, 219, 240, 247, 253, 657, 676, 677, 773, 774,

    775, 776, 778, 779, 780, and 781.

2.  Documents relating to confidential mediations.  See ECF Nos. 616, 623, 624, 625, 627,

    630, 631, 638, 639, 641, 649, 650, 651, 655, 656, 661, 711, 715, 716, 718, 719, and 721.

3.  Documents containing medical and other sensitive information about individual

    plaintiffs.  See ECF Nos. 429, 547, 772, 782, and 786.

The Post has provided extensive press coverage of the Fort Totten Metrorail collision.

See Post's Mem. at 3.  It asserts, however, that the Court's sealing of the foregoing documents

has hindered its ability "to report fully on the collision and the subsequent legal proceedings,"[2]

---

[2] In addition to the docket entries listed above, the Post seeks access to several other documents that, while related to
sealed filings, are not themselves sealed.  See, e.g., Post's Reply at 3 n.3, 9 n.5 (requesting access to, among other
(continued . . . )

and thus moves for leave to intervene in these cases under Federal Rule of Civil Procedure 24(b) and for access to the sealed records.[3]  Id.  As grounds for its motion, the Post invokes both "common law and First Amendment rights of access to the court records in these cases."  Id. at 1.

## II.  Motion for Access to Court Records

The public's right of access to judicial records derives from two independent sources: the common law and the First Amendment.  See United States v. El-Sayegh, 131 F.3d 158, 160-61 (D.C. Cir. 1997).  Perhaps recognizing that the District of Columbia Circuit has expressed doubts about whether the First Amendment right of access applies outside of the criminal context, see SEC v. Am. Int'l Grp., 712 F.3d 1, 5 (D.C. Cir. 2013); Ctr. for Nat'l Sec. Studies v. DOJ, 331 F.3d 918, 935 (D.C. Cir. 2003), the Post's motion rests primarily on the common law right of access, see Post's Mem. at 13 n.11.  Accordingly, the Court will focus on that right, only addressing the First Amendment right of access where the common law does not provide a sufficient basis for unsealing the documents requested by the Post.

"In 'the courts of this country'—including the federal courts—the common law bestows upon the public a right of access to public records and documents."  Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 902 (D.C. Cir. 1996) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978)).  This right extends to "judicial records."  El-Sayegh, 131 F.3d at

---

( . . . continued)

filings, ECF Nos. 202, 602, 606, 609, and 770, none of which are sealed).  Because these filings are available on the public docket, they will not be discussed in this Memorandum Opinion.

[3] The parties do not seriously dispute that the Post, as a nonparty newspaper, may "permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order."  EEOC v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998).  Although WMATA argues in a footnote that the Post's motion failed to include a "pleading that sets out the claim or defense for which intervention is sought" as required by Rule 24(c), WMATA's Opp'n at 3 n.3, no such pleading is required where, as here, a party seeks to intervene not to "litigate a legal claim or defense on the merits," but rather to gain access to court records, see Nat'l Children's Ctr., 146 F.3d at 1045.  The Court will therefore grant the Post's motion for permissive intervention under Rule 24(b).

161; <u>Am. Int'l Grp.</u>, 712 F.3d at 3.  "[W]hether a document must be disclosed pursuant to the

common law right of access involves a two-step inquiry." <u>Wash. Legal Found.</u>, 89 F.3d at 902.

First, the court must determine whether the document sought is a judicial record. <u>See id.</u>  And in

this Circuit, "not all documents filed with courts are judicial records." <u>Am. Int'l Grp.</u>, 712 F.3d

at 3.  Rather, "whether something is a judicial record depends on 'the role it plays in the

adjudicatory process.'" <u>Id.</u> (quoting <u>El-Sayegh</u>, 131 F.3d at 163 (holding that a withdrawn guilty

plea agreement in a criminal case which the district court never ruled upon was not a judicial

record)).  The reasoning for this rule is intuitive: "the concept of a judicial record 'assumes a

judicial decision,' and with no such decision, there is 'nothing judicial to record.'" <u>Id.</u> (quoting

<u>El-Sayegh</u>, 131 F.3d at 162).

    If a document qualifies as a judicial record, the court proceeds to the second inquiry:

balancing the public's right of access against the interests favoring nondisclosure. <u>See</u> <u>Wash.</u>

<u>Legal Found.</u>, 89 F.3d at 902.  The "starting point" of this analysis is the "'strong presumption in

favor of public access to judicial proceedings.'" <u>EEOC v. Nat'l Children's Ctr., Inc.</u>, 98 F.3d

1406, 1409 (D.C. Cir. 1996) (citation omitted).  In <u>United States v. Hubbard</u>, 650 F.2d 293 (D.C.

Cir. 1980), the Circuit "identified six factors that might act to overcome this presumption":

> (1) the need for public access to the documents at issue; (2) the extent of previous
> public access to the documents; (3) the fact that someone has objected to
> disclosure, and the identity of that person; (4) the strength of any property and
> privacy interests asserted; (5) the possibility of prejudice to those opposing
> disclosure; and (6) the purposes for which the documents were introduced during
> the judicial proceedings.

<u>Nat'l Children's Ctr.</u>, 98 F.3d at 1409 (citing <u>Hubbard</u>, 650 F.2d at 317-22).  Although this

inquiry is necessarily case-specific, there are a few "time-honored exceptions" to the common

law right of access.  <u>Hubbard</u>, 650 F.2d at 315.  "There is, for instance, no right of access to

'documents which have traditionally been kept secret for important policy reasons,'" In re Motions of Dow Jones & Co., 142 F.3d 496, 504 (D.C. Cir. 1998) (citation omitted), such as "protect[ing] trade secrets, or the privacy and reputation of victims of crimes," "guard[ing] against risks to national security interests," and "minimiz[ing] the danger of an unfair trial by adverse publicity," Hubbard, 650 F.2d at 315-16 (internal footnotes omitted).

With this legal framework as its guide, the Court will address the applicability of the common law right of access with respect to each category of sealed documents at issue here.

**A.    Settlement Documents Concerning Minors**

The first category of sealed documents concern settlement agreements involving minors that were filed with and approved by the Court pursuant to D.C. Code § 21-120(a) (requiring court approval of settlements on behalf of minor children). Specifically, these documents consist of petitions for approval of settlements involving minors, the Court's orders approving those settlements as fair and reasonable, a notice confirming the disbursement of settlement funds in one case, and a dismissal order based upon this notice. See ECF Nos. 218, 219, 240, 247, 253, 657, 676, 677, 773, 774, 775, 776, 778, 779, 780, and 781.

The initial question for the Court to address is whether the minor settlement documents are "judicial records" to which the common law right of access attaches. They plainly are. Indeed, the documents consist of (1) filings upon which the Court relied in deciding whether to approve settlements and dismiss cases, and (2) orders approving those settlements and dismissing cases. Because of the significant roles they "play[ed] in the adjudicatory process," El-Sayegh, 131 F.3d at 163, the documents qualify as judicial records, see SEC. v. Van Waeyenberghe, 990 F.2d 845, 849 (5th Cir. 1993) ("[S]ettlement agreements that are filed and submitted to the district court for approval" and orders approving such settlements are "judicial

records" to which the "public's common law right of access to court records . . . applies."
(collecting cases)).  No party argues otherwise.

As judicial records, the minor settlement documents are presumptively-accessible unless
sealing is justified under the Hubbard factors.  The first of those factors is "the need for public
access to the documents at issue."  Nat'l Children's Ctr., 98 F.3d at 1409.  Because WMATA is a
governmental entity, its presence in this litigation enhances the need for public access to the
judicial records.  See id. ("'The appropriateness of making court files accessible is accentuated in
cases where the government is a party.'" (citation omitted)).  And the fact that some of the sealed
records reveal how WMATA utilized taxpayer funds in settling lawsuits further strengthens the
public's stake in their release.  Cf. id. at 1410 (public had interest in the disclosure of the terms
of a settlement agreement with a non-profit organization because "[t]he public should be able to
learn how the money it has contributed to a charitable organization is being spent").  Irrespective
of the presence of a governmental entity in this litigation, a "court's approval of a settlement,"
even between private parties, is a matter "which the public has the right to know about and
evaluate," LEAP Sys., Inc. v. MoneyTrax, Inc., 638 F.3d 216, 220 (3d Cir. 2011) (internal
quotation marks and citation omitted), for "[t]he public has an interest in knowing what terms of
settlement a federal judge would approve and perhaps therefore nudge the parties to agree to,"
Jessup v. Luther, 277 F.3d 926, 929 (7th Cir. 2002).  Finally, the Fort Totten train collision—the
deadliest event in WMATA's history—is a matter of significant public concern, particularly to
residents of the District of Columbia metropolitan area who comprise the bulk of WMATA's
ridership.  Although the minor settlement documents do not shed much light (if any) on the
circumstances of the train collision itself, their disclosure would, at the least, cause an
"incremental gain in public understanding of an immensely important historical occurrence."

6

Nixon, 435 U.S. at 602; see also Mokhiber v. Davis, 537 A.2d 1100, 1117 (D.C. 1988) (per

curiam) ("[A]n issue of greater and wider public importance may create a stronger claim of

access than a less important issue," even when "[t]he primary public interest . . . relate[s] to the

underlying dispute, not to the judicial proceedings, as such, in which the records arose.").  For all

of these reasons, the need for public access weighs heavily in favor of disclosure.

      The second Hubbard factor is "the extent of previous public access to the documents."

Nat'l Children's Ctr., 98 F.3d at 1409.  Here, there is no indication that the minor settlement

documents have been previously disclosed to the public.  While the Post is correct in noting that

some details about the minor plaintiffs are part of the public record, Post's Mem. at 11-12, the

terms of their settlements are not.  This factor therefore weighs against disclosure.

      The third Hubbard factor is "the fact that someone has objected to disclosure, and the

identity of that person."  Nat'l Children's Ctr., 98 F.3d at 1409.  All defendants have

unequivocally objected to the disclosure of the minor settlement documents.  See WMATA's

Opp'n at 14-17; Corp. Defs.' Opp'n at 6-8.  Some of the defendants' objections, however, are

made on behalf of the minor plaintiffs and seek to protect their privacy interests.  See WMATA's

Opp'n at 15 ("Public disclosure [of settlement amounts] endangers these minors by exposing

them to the potential avarice and ill will of those who may not share the minors' best interests.");

Corp. Defs.' Opp'n at 7 ("Disclosure of [settlement amounts] could place these minors at risk of

adverse attention from ill-intentioned adults and others who would have no interest in them but

for the anticipated receipt of future payments.").  The Court accords no weight to these particular

objections since the defendants have no standing to raise them.  See Kowalski v. Tesmer, 543

U.S. 125, 129 (2004) ("[A] party 'generally must assert his own legal rights and interests, and

cannot rest his claim to relief on the legal rights or interests of third parties.'" (citation omitted)).

7

As for the plaintiffs, they broadly assert that filings relating to "damages" should remain sealed, while those concerning "liability" should not. Pl.'s Resp. at 1-2. More specifically, they oppose disclosure of information containing "private, sensitive personal information" about the minor plaintiffs, "including intra-family relationships, mental and physical health issues, and other extremely sensitive matters." Id. at 2. But the plaintiffs do not explicitly oppose disclosure of the minor settlement documents, nor do they raise the particular privacy concerns the defendants attempt to assert on their behalf.[4] And insofar as the minor settlement documents contain sensitive medical and other personal information, the Post agrees that this information should be redacted, see Post's Reply at 2-3, 8—as does the Court, for reasons that will be explained below. Thus, the plaintiffs' objections are inapposite to the Post's request for access to the minor settlement documents. The Court does, however, consider the defendants' properly-raised objections as a factor weighing against disclosure.

The fourth Hubbard factor examines "the strength of any property and privacy interests asserted" by those objecting to disclosure. Nat'l Children's Ctr., 98 F.3d at 1409. The defendants assert that confidentiality was an essential term of the parties' settlement agreements, and that it would consequently be unfair for the Court to pierce that confidentiality by disclosing the minor settlement documents. See WMATA's Opp'n at 15-16; Corp. Defs.' Opp'n at 8. The

---

[4] Even if the plaintiffs had raised these objections, they would not necessarily have been sufficient to overcome the public's right of access to the minor settlement documents. While courts undoubtedly have a special obligation to protect the interests of minors, that obligation does not mandate perfunctory sealing of settlement documents involving minors submitted for court approval. Quite the opposite, courts often deem the sealing of such settlement documents inappropriate. E.g., Verni ex rel. Burstein v. Lanzaro, 960 A.2d 405, 410-13 (N.J. Super. Ct. App. Div. 2008); Storms ex rel. Storms v. O'Malley, 779 A.2d 548, 570 (Pa. Super. Ct. 2001); Copley Press, Inc. v. Superior Court, 74 Cal. Rptr. 2d 69, 74 (Cal. Ct. App. 1998); Zukerman by Zukerman v. Piper Pools, Inc., 607 A.2d 1027, 1030 (N.J. Super. Ct. App. Div. 1992), certif. denied, 614 A.2d 617 (N.J. 1992); C.L. v. Edson, 409 N.W.2d 417, 423 (Wisc. Ct. App. 1987). The parties have not cited, nor has the Court found, any authority to the contrary.

Post counters that courts have rejected parties' reliance on confidentiality agreements as a reason for sealing judicial records. Post's Reply at 5-6.

There is caselaw supporting both positions. Most notably weighing in the defendants' favor is National Children's Center, 98 F.3d at 1409. There, the District of Columbia Circuit reviewed the district court's decision to seal a consent decree memorializing the parties' settlement agreement. Id. The district court's sealing decision was based, in part, on its finding that "confidentiality was [an] important" factor in the defendant's decision to settle the case. Id. The Circuit agreed that this "was an appropriate consideration under Hubbard," despite reversing the district court's ruling on different grounds. Id. at 1409-10. Similarly, in Mokhiber, 537 A.2d at 1116, the District of Columbia Court of Appeals listed the "inequity of exposing parties . . . who acted in reliance on continuing confidentiality" as one of the "factors counseling against disclosure" of sealed settlement information in civil cases. As that court reasoned, "protective orders typically induce reliance by the parties and often constitute a significant inducement to settlement;" thus, "parties' reliance on secrecy and the goal of encouraging settlement . . . very frequently will constitute a compelling reason to continue an existing protective order." Id. at 1116-17; see also El-Sayegh, 131 F.3d at 163 (noting "the policy in favor of civil settlement," and the risks posed to this policy by disclosure of settlement negotiations).

As the Post points out, other courts have been unwilling to deem parties' reliance on continuing confidentiality in reaching a settlement agreement a sufficient basis to overcome the public's right of access. The Eleventh Circuit appears to have taken the strongest stance on this issue, finding it

> immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active encouragement. Once a matter is brought before a court for resolution, it is

no longer solely the parties' case, but also the public's case.  Absent a showing of extraordinary circumstances set forth by the district court in the record . . . , the court file must remain accessible to the public.

Brown v. Advantage Eng'g, Inc., 960 F.2d 1013, 1016 (11th Cir. 1992).  The Third Circuit has likewise held that a "court's approval of a settlement" is a matter "which the public has a right to know about and evaluate," and that this right cannot be overcome by "the generalized interest in encouraging settlements," even in cases where "settlement would not be effectuated if . . . confidentiality was not assured."  Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344, 346 (3d Cir. 1986); but see LEAP Sys., 638 F.3d at 222 (distinguishing Rittenhouse on the grounds that the district court's sealing of settlement information was based not merely on "a generalized concern about discouraging settlement agreements," but rather a party's demonstrated reliance on the district court's repeated assurances of confidentiality).

National Children's Center indicates that the District of Columbia Circuit would not take a position as extreme as the Eleventh Circuit's.  Although the Circuit did not explain its rationale, that case at least stands for the proposition that a party's demonstrated reliance on confidentiality as a condition of a settlement agreement is an "appropriate consideration" for a court deciding whether to unseal judicial records containing settlement information.  Nat'l Children's Ctr., 98 F.3d at 1409.  Applying that principle here, the Court deems the defendants' reliance on the terms of their settlements remaining confidential a factor weighing against disclosure of the minor settlement documents.

The fifth Hubbard factor is "the possibility of prejudice to those opposing disclosure." Id.  The defendants contend that disclosure of the minor settlement documents would prejudice them by complicating their ability to settle with the remaining plaintiffs in these cases and by

tainting future jury pools.  WMATA's Opp'n at 16; Corp. Defs.' Opp'n at 6.  The Court rejects

these objections out of hand.  As the Seventh Circuit has explained, a defendant's "desire to keep

the amount of its payment quiet (perhaps to avoid looking like an easy mark, and thus drawing

more suits) is not nearly on a par with national security and trade secret information," Herrnreiter

v. Chicago Hous. Auth., 281 F.3d 634, 637 (7th Cir. 2002)—i.e., the types of information

"'which have traditionally been kept secret for important policy reasons,'" Dow Jones & Co.,

142 F.3d at 504 (citation omitted).  Similarly, courts have held that guarding a party from

adverse consequences in other civil lawsuits is not a proper basis for sealing judicial records.

See Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1137 (9th Cir. 2003) ("[D]isclosure

might harm State Farm by exposing it to additional liability and litigation . . . , but a litigant is

not entitled to the court's protection from this type of harm.").  And any risk of jury prejudice

caused by disclosure of the minor settlement documents (which the Court does not believe would

be substantial in any event) can be addressed through appropriate voir dire.  Accordingly, the

fifth Hubbard factor weighs neither for nor against disclosure.

Finally, the sixth Hubbard factor examines "the purposes for which the documents were

introduced during the judicial proceedings."  Nat'l Children's Ctr., 98 F.3d at 1409.  The

settlement agreements at issue were submitted to the Court pursuant to D.C. Code § 21-120(a),

which declares that a settlement made "on behalf of a minor child . . . is not valid unless

approved by a judge of the court in which the action is pending."  This statute reflects a well-

established "policy that a minor plaintiff, under certain circumstances, requires special

consideration from the court not ordinarily accorded other litigants."  Godfrey v. Washington,

653 A.2d 371, 373 (D.C. 1995).  And this policy of protecting minors is vindicated, rather than

undermined, by the disclosure of records generated in connection with a court's approval of a

minor settlement, for such disclosure facilitates public scrutiny of the judicial approval process.

See Hill v. Kenworth Truck Co., No. 2:07-0223, 2008 WL 4058426, at *4 (S.D. W. Va. Aug. 26,

2008) ("[T]he amount of the settlement is not a tangential matter with respect to the plaintiff's

petition [for approval of a settlement on behalf of a minor], but rather goes to the heart of the

petition inasmuch as the court is being asked to approve the amount of the settlement and the

distribution thereof.  Without access to this information, the public has no means of judging the

product of the court in this case." (emphasis added)); C.L. v. Edson, 409 N.W.2d 417, 423

(Wisc. Ct. App. 1987) ("[T]he public's interest in protecting minors is likely better served by

allowing public scrutiny of minor settlements.").  As Justice Brandeis famously remarked on the

importance of transparency, "'[s]unlight is . . . the best of disinfectants.'"  Buckley v. Valeo, 424

U.S. 1, 67 (1976) (quoting L. Brandeis, Other People's Money 62 (National Home Library

Found. ed. 1933)).  Because § 21-120(a) is designed to protect minors from disadvantageous

settlements, and because disclosure of the minor settlement documents would advance this goal

by inviting public scrutiny of the Court's decisions approving those settlements, the sixth

Hubbard factor weighs heavily in favor of disclosure.

        To sum up, the first and sixth Hubbard factors weigh heavily in favor of disclosure; the

second, third, and fourth factors weigh in favor of nondisclosure; and the fifth factor is neutral.

Although most of the factors weigh in favor of nondisclosure, this is not determinative because a

strong showing on one Hubbard factor can outweigh several other factors.  See In re Sealed

Case, 237 F.3d 657, 666 (D.C. Cir. 2001) (indicating that "an extraordinarily strong privacy

interest" could, by itself, outweigh the remaining five Hubbard factors).  Here, given the strength

of the public's interest in accessing the minor settlement documents, and considering that

disclosure of the documents would vindicate the purposes for which they were introduced during

the judicial proceedings, the weight of the first and sixth <u>Hubbard</u> factors overcome the

remaining factors.  Accordingly, the strong presumption of access to the minor settlement

documents has not been rebutted and the documents must be unsealed.

This decision comes with a few caveats.  First, the Post and the other parties agree that

the minors' medical information should be redacted from the documents to be unsealed.  The

public has little interest, if any, in disclosure of this information, while the plaintiffs have a

strong privacy interest in keeping this highly personal information sealed.  Thus, sealing is

permissible under both the common law right of access and, assuming it applies in this context,

the First Amendment.  <u>See</u> <u>United States v. Brice</u>, 649 F.3d 793, 796-98 (D.C. Cir. 2011)

(affirming district court's decision to seal sensitive medical information about minors under both

the First Amendment and common law rights of access).  Based on the Court's review, the only

minor settlement document containing such information is ECF No. 657-2 at 3-5 (medical record

of a minor plaintiff).  The Court will therefore instruct the parties to submit a redacted version of

ECF No. 657 for filing on the public docket, omitting the sensitive medical information

contained at pages three through five of ECF No. 657-2.

Second, some of the minor settlement documents list the minors' full names and full

birthdates of the minors and others.  <u>E.g.</u>, ECF No. 219 at 4; ECF No. 676 at 1.  Under Federal

Rule of Civil Procedure 5.2(a), "[u]nless the court orders otherwise, in an electronic or paper

filing with the court that contains an individual's . . . birth date, [or] the name of an individual

known to be a minor . . . a party or nonparty making the filing may include only . . . the year of

the individual's birth . . . [or] the minor's initials."  Insofar as it concerns minors' identities, Rule

5.2(a) reflects Congress's judgment "that the interest of minors in privacy is greater than the

public's interest in learning their names, even when there is no particular threat to the juvenile's

physical safety or well-being."[5]  Doe ex rel. Doe v. Kamehameha Sch./Bernice Pauahi Bishop

Estate, 625 F.3d 1182, 1187 (9th Cir. 2010) (Reinhardt, J., joined by Kozinski, C.J., dissenting

from denial of rehearing en banc).  Accordingly, consistent with the requirements of Rule 5.2(a)

and its underlying policy of "providing for juvenile anonymity as the general practice in federal

courts," id., the Court will instruct the parties to submit redacted versions of ECF Nos. 218, 219,

240, 247, 253, 657, 676, 677, 773, 774, 775, 776, 778, 779, 780, and 781 for filing on the public

docket, omitting any references to individuals' birthdates and the minors' names, as well as the

names of the minors' family or guardians, given that public disclosure of those names could

reveal the minors' identities.

**B.      Documents Relating to Confidential Mediations**

The second category of sealed documents relates to confidential mediations conducted by

the parties.  See ECF Nos. 616, 623, 624, 625, 627, 630, 631, 638, 639, 641, 649, 650, 651, 655,

656, 661, 711, 715, 716, 718, 719, and 721.  This category of sealed documents can be further

divided into two subcategories, which the Court will address separately.

**1.      Documents Relating to the Tawanda Brown Mediation**

The first subcategory concerns a mediation with the defendants and one of the plaintiffs,

Tawanda Brown.  Per an Order of this Court dated May 7, 2010, ECF No. 4, this mediation was

subject to the confidentiality restrictions of Local Civil Rule 84.9(a)(1) ("The Court hereby

prohibits the mediator, all counsel and parties and any other persons attending the mediation

from disclosing any written or oral communications made in connection with or during any

---

[5] Although there has been no properly-raised assertion that public disclosure of identifying information about the
minors or their custodians would put them at risk of harm, it is not beyond the pale to envision that disclosure of the
minors' receipt of large financial settlements would subject them to such potential conduct if their identities are not
protected.  And there is no good reason to create this risk considering the disclosures that are being authorized (i.e.,
the settlement amounts and terms).

mediation session."). After the mediation, Ms. Brown made statements to the media revealing

confidential settlement communications made by the defendants during mediation. These

disclosures led the Corporate Defendants to move to dismiss Ms. Brown's complaint for

breaching mediation confidentiality. The Court allowed the documents submitted in connection

with this motion to be sealed due to the Corporate Defendants' confidentiality concerns. <u>See</u>

ECF Nos. 616, 625, 627, 639, and 641. Ultimately, the Court denied the motion to dismiss at a

hearing held on February 28, 2012. That hearing was not sealed and the transcript for the

hearing is available on the public docket. <u>See</u> ECF No. 659.

As a threshold matter, the documents in this subcategory qualify as judicial records

subject to the common law right of access because they were filed with the Court and were the

subjects of judicial action. <u>See</u> <u>Am. Int'l Grp.</u>, 712 F.3d at 3; <u>El-Sayegh</u>, 131 F.3d at 163. Thus,

the remaining question is whether the presumption of access associated with these filings has

been overcome upon consideration of the <u>Hubbard</u> factors.

As to the first <u>Hubbard</u> factor, there is a need for public access to these records given the

significance of the Fort Totten Metrorail collision, <u>see</u> <u>supra</u> at 6-7, and because the records were

relied upon by the Court in its public decision denying the Corporate Defendants' motion to

dismiss, <u>see</u> <u>Hubbard</u>, 650 F.2d at 318. The third <u>Hubbard</u> factor weighs against disclosure

because all defendants object to unsealing. As to the nature of the defendants' objections, they

emphasize the importance of maintaining confidentiality over the mediation process because of

the Local Rule requiring such confidentiality and because of the policy goal of promoting candor

in settlement negotiations. <u>See</u> WMATA's Opp'n at 10-14; Corp. Defs.' Opp'n at 4-5. The

Corporate Defendants further claim that disclosure of the sealed records could taint jury pools in

upcoming trials. Corp. Defs.' Opp'n at 5-6. But these interests are not actually implicated by

disclosure of the sealed records at issue here.  This is because the records do not reveal

previously-undisclosed statements made during confidential mediations, but rather contain

statements Ms. Brown made to the media which were aired on television and published on the

internet.  See ECF Nos. 616, 625, 627, 639, and 641.  The fact that this information is freely

available in the public domain weighs heavily in favor of disclosure under the second Hubbard

factor, and negates the defendants' asserted privacy interests and concerns of prejudice, the

fourth and fifth Hubbard factors.[6]  Any harm caused by Ms. Brown's statements has already

been done, so keeping judicial records repeating those statements sealed indefinitely will not

advance the defendants' interests in nondisclosure.  Finally, the sixth Hubbard factor weighs in

favor of disclosure because the sealed records were introduced in connection with a motion

containing publicly-available information which was denied in open court.

  The Court thus finds that the first, second, and sixth Hubbard factors weigh in favor of

disclosure, the third factor weighs against disclosure, and the fourth and fifth factors are neutral.

Because the defendants have not rebutted the strong presumption of access, the filings relating to

the Corporate Defendants' motion to dismiss Ms. Brown's complaint must be unsealed.

  **2.**  **Documents Relating to the "Defendants-Only" Mediations**

  The second subcategory of sealed mediation documents concerns mediations conducted

among the defendants only in late 2011 and early 2012.  These mediations were subject to a

confidentiality agreement between the defendants, but not Local Civil Rule 84.9, as the Court's

May 7, 2010 Order did not explicitly order that mediation among the defendants only (and

---

[6] Insofar as any of this information is not already in the public domain, the defendants have failed to identify any such previously-undisclosed information with specificity and thus have not carried their burden to justify continued sealing.

without the plaintiffs) be subject to the Court's local rules governing mediation.  Following these

defendants-only mediations, a dispute arose concerning whether the Corporate Defendants and

WMATA had reached an enforceable settlement agreement.  The Corporate Defendants

thereafter moved to enforce the settlement agreement, which WMATA moved, in turn, to strike.

Based on the defendants' confidentiality concerns, the Court allowed the filings submitted in

connection with these motions, and other filings regarding the defendants-only mediations, to be

sealed.  Among these sealed records are (1) WMATA's motion to strike the Corporate

Defendants' Emergency Motion to Enforce Settlement Agreement and all related briefs; (2)

transcripts of court hearings attended only by the defendants where the Court granted WMATA's

motion to strike, ruled that the defendants had reached no enforceable settlement agreement

during mediation, and denied the Corporate Defendants' motion for reconsideration of these

rulings; and (3) other briefs discussing the defendants-only mediations which were relied upon

by the Court in adjudicating the parties' rights.  See ECF Nos. 623, 624, 649, 650, 651, 655, 656,

661, 715, 718, and 721.

    All of these documents are judicial records subject to the common law right of access

because they either were filed with the Court and were the subjects of judicial action, see Am.

Int'l Grp., 712 F.3d at 3; El-Sayegh, 131 F.3d at 163, or are transcripts of hearings during which

the Court ruled on motions related to the defendants-only mediations, see Nat'l Children's Ctr.,

Inc., 98 F.3d at 1409 ("A court's decrees, its judgments, its orders, are the quintessential business

of the public's institutions.").  For these records to remain sealed, then, the presumption of

access must be overcome upon consideration of the Hubbard factors.

    Turning to the first Hubbard factor, there is a need for public access to these records

because of the significance of the Fort Totten Metrorail collision generally, and this need is

enhanced because of the involvement of WMATA—a governmental entity—in the defendants-only mediations.  See supra at 6-7.  The second Hubbard factor, however, weighs against disclosure because there appears to have been no prior disclosure of this information.  Moreover, the third Hubbard factor weighs against disclosure because all defendants have objected to unsealing the records.

Analysis of the remaining Hubbard factors blends together.  As to the fourth and fifth factors, the defendants emphasize that confidentiality is mandated by their mediation agreement, and note the chilling effect that disclosure could have on civil litigants' willingness to settle cases through mediation.  See WMATA's Opp'n at 10-14; Corp. Defs.' Opp'n at 4-5.  They further note that the policy of retaining confidentiality in mediation is reflected by Local Civil Rule 84.9(a)(1),[7] and Federal Rule of Evidence 408, which generally bars the admission of evidence of "conduct or a statement made during compromise negotiations."  See WMATA Opp'n at 11; Corp. Defs.' Opp'n at 4.

The defendants' arguments overlook the reason why the sealed records were introduced in the first place (which, incidentally, is the sixth Hubbard factor): the Corporate Defendants wanted the Court to enforce a purported settlement agreement reached during the defendants-only mediations.  This point is significant because when litigants "call on the courts" to resolve disputes, "they must accept the openness that goes with subsidized dispute resolution by public

---

[7] The Corporate Defendants appear to contend that Local Civil Rule 84 applied to the defendants-only mediations.  See Corp. Defs.' Opp'n at 4 (identifying "Local Rule 84" as one of the "factors mandat[ing] confidential treatment of" the defendants-only mediations).  Notably, they took the exact opposite position previously in this litigation, when seeking to enforce their purported settlement agreement with WMATA.  See ECF No. 633 at 11 ("The express terms of Rule 84 precludes its application to the type of private mediation that the Defendants used . . .").  And the Court largely agreed with this position, as indicated at the motions hearing held on February 28, 2012.  See ECF No. 651 at 34 (holding that "Rule 84 . . . doesn't strictly apply here" because the defendants-only mediations did not qualify as "mediation within the court's mediation program," but nonetheless finding the rule "instructive.").  The Court sees no reason to depart from this conclusion now.

(and publicly accountable) officials," for "[j]udicial proceedings are public rather than private

property." Union Oil Co. of Cal. v. Leavell, 220 F.3d 562, 568 (7th Cir. 2000). Thus, when

information subject to confidentiality restrictions "become[s] a subject of litigation, it must be

opened to the public just like other information (such as the wages paid to an employee, or the

price for an architect's services) that becomes the subject of litigation." Herrnreiter, 281 F.3d at

637. Applying this principle in Herrnreiter, the Seventh Circuit held that a party to a confidential

settlement agreement "relinquished any claim to confidentiality" by asking the court "to enforce

the agreement." Id. at 636. The court reasoned that "[a] settlement agreement is a contract, and

when parties to a contract ask a court to interpret and enforce their agreement, the contract enters

the record of the case and thus becomes available to the public, unless it contains information

such as trade secrets that may legitimately be kept confidential." Id.; see also Rittenhouse, 800

F.2d at 345 ("Having undertaken to utilize the judicial process to interpret the settlement and to

enforce it, the parties are no longer entitled to invoke the confidentiality ordinarily accorded

settlement agreements."). So too here. Regardless of the confidentiality restrictions and

evidentiary prohibitions applicable to the mediation-related documents, those records became

presumptively-accessible once they were filed with the Court in connection with a dispute of

which the defendants sought judicial resolution, and the Court did, in fact, resolve the dispute.

The defendants' confidentiality objections therefore do not weigh against disclosure under the

fourth and fifth Hubbard factors, while the sixth Hubbard factor does weigh in favor of

disclosure.

The defendants contend that the Court's disclosure of the mediation-related documents

would undermine the confidentiality restrictions imposed by the defendants' mediation

agreement, see WMATA's Opp'n at 12; Corp. Defs.' Opp'n at 5, but, in reality, it was the

Corporate Defendants' conduct that compromised mediation confidentiality.  The defendants'

confidentiality agreement prohibited disclosure of mediation-related communications to parties

outside the mediation circle, including this Court.  <u>See</u> Mediation Agreement, ECF No. 622-6 at

2 ("If this matter does not settle in mediation, the Parties may report to a court that mediation has

been unsuccessfully attempted . . . , <u>but no Party may provide any details or otherwise disclose</u>

<u>what happened in the mediation</u>.  <u>Nor may a Party refer to or rely on offers, promises, conduct or</u>

<u>statements made during the mediation in court submissions</u>, testimony or expert reports."

(emphasis added)).  Despite this prohibition, the Corporate Defendants asked the Court to

enforce a purported settlement agreement based on confidential communications arising out of

the defendants-only mediations.  Although the Court ultimately denied this request and granted

WMATA's motion to strike the Corporate Defendants' motion to enforce settlement, by that

point the defendants had subjected the confidential mediation information to the strong

presumption of access through their filings with this Court.  Had the Corporate Defendants

complied with the confidentiality provision of their mediation agreement, the mediation-related

documents would not have become judicial records to which the common law right of access

attaches.  But the Corporate Defendants chose a different route, unilaterally deciding to submit

the mediation dispute for judicial resolution.  By doing so, the Corporate Defendants assumed

the risk that the records relating to that dispute would be made public.  In light of these

circumstances, disclosure in this case would not, as a general matter, have a chilling effect on the

mediation process.  Rather, the upshot of the Court's ruling is this: a party who enters into an

agreement to keep mediation strictly confidential should not expect to retain confidentiality if it

brings a dispute arising out the mediation to a court's attention, contrary to the terms of the

confidentiality agreement.

None of this is to say that confidentiality restrictions on mediation are toothless.  On the contrary, breaches of an agreement requiring confidentiality may be redressed in a separate civil suit.  See Herrnreiter, 281 F.3d at 637 ("[I]f initiating litigation about [an] agreement (or causing such litigation to be initiated) amounts to a breach of the confidentiality clause, then any party who can demonstrate damages because of the disclosure may obtain them in a separate action").  And in cases governed by Local Rule 84, violations of this Court's rules and implementing orders mandating confidentiality in mediation may be met with appropriate sanctions.  See Williams v. Johanns, 529 F. Supp. 2d 22, 24 (D.D.C. 2008) (holding counsel in civil contempt for violating confidentiality order governing mediation).  But indefinite sealing of judicial records is not a form of relief available to a party claiming a breach of mediation confidentiality during litigation.  The longstanding tradition of openness in judicial proceedings cautions otherwise.  Thus, both the Corporate Defendants' and WMATA's objections to disclosure must be rejected.

In sum, the Court concludes that the first and sixth Hubbard factors weigh in favor of disclosure (with the first factor weighing heavily so), the second and third factors weigh against disclosure, and the fourth and fifth factors are neutral.  Based on this balancing, the Court finds that the presumption of access associated with the documents relating to the defendants-only mediations has not been rebutted.  These judicial records must therefore be unsealed.

## C.     Documents Containing Medical and Other Sensitive Information about Individual Plaintiffs

The third category of sealed documents contains medical and other sensitive information about individual plaintiffs.  See ECF Nos. 429, 547, 772, 782, and 786.  This category encompasses a broad range of documents, which the Court will address separately.

21

ECF No. 429 is a motion in limine seeking to exclude from trial sensitive personal information concerning a minor plaintiff, and ECF No. 547 is the order granting that motion. While these documents are judicial records subject to the common law right of access, none of the Hubbard factors weigh in favor of their disclosure.  Specifically, (1) the public has no discernible interest in disclosure of the records; (2) the records were not previously disclosed to the public; (3) all parties object to disclosure; (4) the minor plaintiff has a very strong privacy interest in keeping the information sealed; and (5) the Court granted the motion in limine precisely because it sought to exclude irrelevant and prejudicial information from trial that would have unduly infringed the minor plaintiff's privacy interests, and unsealing the records now would undermine that ruling.  Nor would disclosure be required under the First Amendment right of access—assuming that right applies outside of the criminal context—because sealing serves the compelling interest of "'not exposing intimate . . . facts about . . . juveniles to all and sundry'"; unsealing the records would harm this compelling interest; and no alternatives to sealing the records in their entirety would adequately protect the compelling interest.[8]  See Brice, 649 F.3d at 796-97 (citation omitted).  ECF Nos. 429 and 547 will therefore remain sealed.

The remaining documents in this category concern two cases: Smith v. WMATA, No. 09-cv-2061, and Washington v. WMATA, No. 09-cv-2062.  Specifically, ECF No. 772 is the parties' Amended Joint Pre-trial Statement for both Smith and Washington, and ECF Nos. 782 and 786 are the opposition and reply briefs, respectively, submitted to the Court in connection with a motion in limine filed in Washington.  Because both Smith and Washington settled before trial, the Court had no occasion to issue any rulings relating to these documents or otherwise rely

---

[8] Redaction of the sealed records is not a viable option because, after excising the sensitive information, only generic language with no meaningful content would remain.

on them in adjudicating the parties' rights.  Thus, since the filings played no role whatsoever in the Court's adjudicatory process, they are not judicial records subject to the common law right of access.  See Am. Int'l Grp., 712 F.3d at 3-4 ("The . . . reports are not judicial records subject to the right of access because the district court made no decisions about them or that otherwise relied on them.").  And assuming, once again, that the First Amendment right of access applies outside of the criminal context, it would not attach to the filings either.  The First Amendment "'guarantees the press and the public access to aspects of court proceedings, including documents, 'if such access has historically been available, and serves an important function of monitoring prosecutorial or judicial misconduct.'"  Id. at 5 (quoting El-Sayegh, 131 F.3d at 160).  The filings at issue here, however, were not an "aspect of court proceedings," nor do they have any "bearing on monitoring judicial conduct," given that the Court took no action with respect to them.  Id.  Because neither a common law nor First Amendment right of access attaches to ECF Nos. 772, 782, and 786, these filings will remain sealed.

### III.  Conclusion

For the foregoing reasons, the Post's motion for leave to intervene and for access to court records is granted in part and denied in part.  The Court will stay the effect of its Order for fourteen days so as to allow the parties an opportunity to appeal.  If there is an appeal within fourteen days, the Court will stay its Order pending the Circuit's resolution of that appeal, unless otherwise instructed by the Circuit.

**SO ORDERED** this 8th day of August, 2013.[9]

REGGIE B. WALTON
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.